B. F. WHITE *v.* BOARD OF EDUCATION OF LINCOLN COUNTY *et al.*
(No. 8325)

BESSIE PARSONS *v.* BOARD OF EDUCATION OF LINCOLN COUNTY *et al.*
(No. 8331)

THELMA RICHARDSON *v.* BOARD OF EDUCATION OF LINCOLN
COUNTY *et al.*

(No. 8332)

EVA TRAUB ADAMS *v.* BOARD OF EDUCATION OF LINCOLN
COUNTY *et al.*

(No. 8333)

EDITH J. TRAUB *v.* BOARD OF EDUCATION OF LINCOLN
COUNTY *et al.*

(No. 8334)

OREN L. ECKHART *v.* BOARD OF EDUCATION OF LINCOLN
COUNTY *et al.*

(No. 8335)

LOUISE JOHNSTON *v.* BOARD OF EDUCATION OF LINCOLN
COUNTY *et al.*

(No. 8336)

ETHEL PICKENS *v.* BOARD OF EDUCATION OF LINCOLN
COUNTY *et al.*

(No. 8337)

Submitted February 5, 1936.  Decided February 25, 1936.

*Darnall & Morris* and *F. W. Riggs,* for relators.
*Lee, Blessing & Steed,* for respondents.

MAXWELL, JUDGE:

These are original jurisdiction proceedings in mandamus wherein the relators are teachers in the public schools of Lincoln County and the respondents are the Board of Education and the Superintendent of Schools of that county. The cases are dealt with together for convenience.

In each case, the relator was employed by order entered May 6, 1935, by the Board of Education of Lincoln County as a teacher for the school year 1935-36. The employment was in pursuance of Acts of the Legislature, First Extraordinary Session 1933, chapter 8, article 5, section 4. Consequent upon such employment, a written contract as to each relator was executed by him or her and the board of education. Code 1931, 18-7-1. A newly elected board took office July 1, 1935; it employed a new county superintendent of schools, to-wit, Dennis Roy, one of the respondents. The other respondent is the Board of Education of Lincoln County, composed of George W. Walden, president, and S. S. McClure, J. E. Harless, Elza B. Adkins and F. B. Dyer, members.

By an order under the date of August 30, 1935, the Board of Education, upon recommendation of the County Superintendent, transferred each of the relators from the school for which he or she was employed to another school. Six of the relators, to-wit, Bessie Parsons,

Thelma Richardson, Eva Traub Adams, Edith J. Traub, Oren L. Eckhart and Louise Johnston, accepted the transfers under protest and are now, and, since the beginning of the school term in September, have been teaching in the schools to which they were transferred. Two of the relators, B. F. White and Ethel Pickens, declined to accept the transfers and have not been teaching during the current school year.

The relators aver that the action of the superintendent and the board of education in making said transfers was "arbitrary, capricious, and without any good or sufficient cause or reason therefor." The prayer of each petition is that the board of education and the county superintendent be required to recognize the validity of relator's contract and to permit him (or her) to carry out the terms thereof.

The respondents deny that their action in making said transfers was capricious or arbitrary or without good and sufficient reason. They aver that the changes were made in each instance for the best interest and general welfare of the schools of said county, and that such action was made pursuant to the Acts of the Legislature, Extraordinary Session, 1933, chapter 8, article 4, section 10, which provides that "the county superintendent shall * * * assign, transfer, suspend, promote or dismiss teachers, subject to the approval of the board."

Conspicuous in the consideration of these cases from a legal standpoint is the case of *Neal* v. *Board of Education of Putnam County*, 116 W. Va. 435, 181 S. E. 541, decided September 17, 1935. That case involved a transfer similar to those presented in the proceedings at bar. Neal, the teacher affected, prosecuted mandamus against the board of education to compel recognition of his contract. His transfer had been made on the motion of one of the members of the board of education whose action seems to have been personal or political. The board's action was taken without the advice of the county superintendent. In legal justification of its action, the board relied on the same provision of the Acts of 1933 on which the respondents herein rely. We held that the power

to transfer under that section (quoted *supra*) "may be used only for regulation and in emergencies. Even then it must be exercised in a reasonable manner. The best interests of the schools must be intended. Arbitrary or capricious use of the power will not be permitted." The record disclosed that 47 teachers in said county had been transferred. We noted: "The wholesale shifting of teachers on August 20th is alone sufficient to shake the presumption of good faith * * * ." Relators rely explicitly on the holding of that case as indicative of the action which should be taken by the court in the instant cases. Respondents say that the factual situations at bar are essentially different from the situation presented in the *Neal* case, and therefore it is not determinative of the action which should be taken in the cases before us; that, whereas, the record in that case did not disclose that the transfer of the relator was for the good of the school system of the county, the records at bar disclose meritorious purposes in the respect indicated.

*Seriatim* the cases before us are as follows:

### B. F. White's Case:

Relator, an unmarried man residing at Hamlin, county seat of Lincoln County, was employed as principal of the Hamlin Graded School and as teacher of the eighth grade thereof. He was transferred to Dog Bone School, 23 miles from Hamlin, 5 miles off the hard road. The salary for teaching at Dog Bone, a one-room school, is much less than the salary of the principal of Hamlin elementary schools, but the respondents say that they have arranged with the teacher to whom said principalship was assigned to accept a salary equivalent to the salary paid at Dog Bone School so that relator could receive at the latter school the same salary which he would have received at Hamlin. The majority members of the board say that the transfer of White was made on recommendation of the county superintendent and for what they considered to be the best interests of the schools. The county superintendent, Dennis Roy, says that in making said

transfer "he was motivated solely by a desire to promote the efficiency and best interests of the schools and to replace an untrained, unprepared, and incompetent principal with one who was thoroughly trained, experienced, and prepared for the work." Further, he avers, "that while the relator may possess the ability and education to direct a one-room school and teach less advanced pupils, he does not have executive ability to manage a school system employing eight teachers, and embracing three hundred pupils, and that he lacks the education necessary to teach the more advanced eighth grade subjects, all which would have been required of him in the said Hamlin schools."

In support of these averments derogatory of the relator the record discloses in addition to the testimony of the county superintendent the testimony of one teacher. She had taught at the Hamlin school when the relator formerly was its principal. On the other hand, a number of other teachers, some of whom had served with relator in the Hamlin school, express the unequivocal opinion that he was qualified for the position for which he contracted; that as a general thing, he enjoyed the respect and confidence of both teachers and pupils.

It is to be noted that the relator had had the experience of eight years as a teacher and principal of schools, following which experience he served as County Superintendent of Schools of Lincoln County for the four-year term ending July 1, 1935. This twelve years of background cannot be lightly thrown aside. We are of opinion that the evidence does not sustain the charge that the relator was incompetent to resume his former position of principal of the Hamlin elementary schools. The further averment of the respondents that the "relator is an unmarried man who must necessarily pay his living expenses wherever he may be, and that such accommodations may be obtained much cheaper at said new location than in the town of Hamlin," clearly affords no basis of justification for disregarding the contract which had been made with relator.

Another question is raised with reference to White's

case. In furtherance of his duty as county superintendent of schools, in the spring of 1935, he submitted to the County Board of Education, an approved list of qualified teachers for the school year of 1935-36. Acts Extraordinary Session of the Legislature, 1933, chapter 8, article 5, section 4. Because this list submitted by White, superintendent, contains his own name as a teacher qualified for the principalship of the Hamlin elementary schools, it is urged that the contract thereafter entered into between relator and the board of education, upon which contract he now relies, is illegal and void. This challenge of the contract is based on Code, 61-10-15, which makes it unlawful for any county or district officer, whether connected with the school system or otherwise, "to be or become directly or indirectly, pecuniarily interested in the proceeds of any contract or service, or in furnishing any supplies in the contract for, or the awarding or letting of, which as such member, officer, secretary, supervisor, superintendent, principal, or teacher, he may have any voice, influence or control." An officer violating such statute shall be guilty of a misdemeanor, and, in addition to the criminal penalty imposed by the statute, shall forfeit his office. The basic purpose of the statute is to avoid opportunity for the promptings of ulterior and selfish motives on the part of public officials in the awarding of contracts for the public weal. The statute, of course, is wholesome within the limits of its purview, but in our opinion it does not operate to the extent of precluding the county superintendent from including his own name in a list of approved teachers of the county. The superintendent does not make the contracts with the teachers; he merely submits a list of names to the board. We are of opinion that it is not within the spirit and intent of the statute that a retiring superintendent who includes his own name in such list should be branded as a misdemeanant and subjected to the harsh penalties of the law.

*Bessie Parsons' Case:*

This relator, a resident of Midkiff, held a contract as

teacher of Midkiff Graded School. She was assigned to Rhode Fork School, ten miles from her home, and Mae Johnson, who had been employed to teach Rhode Fork was shifted to Nine Mile School. Mrs. Flora Midkiff, also a resident of the village of Midkiff, who by contract was to teach Beach Grove, three miles from her home, succeeded relator at the Midkiff School. The result was that both Flora Midkiff and Mae Johnson were given schools closer to their homes, and relator was required to accept a position ten miles away.

Respondents gave as their reason for this transfer that many patrons of the Midkiff School requested the return of Flora Midkiff who had had many years of experience in teaching, had previously taught at Midkiff, and had been highly instrumental in raising the standard of the school and developing a more efficient library.

*Thelma Richardson's Case:*

This relator's contract was for her services as teacher of Davis Trace School, three miles from the town of Hamlin where she resided. She could reach Davis Trace School by traveling the hard surface road for a distance of two and three-quarter miles and walking the remaining one-quarter mile. She was re-assigned to Hungry School, eight miles from her home, and in traveling thereto it is necessary that she go seven of the eight miles over unimproved road. Garnet Vickers, also a resident of Hamlin, was assigned to the position at Davis Trace.

The board's reason for replacing relator at Davis Trace was that some of the patrons of that school were dissatisfied with her appointment and that there had been requests for her removal. No specific basis for objection to Miss Richardson as teacher of Davis Trace is pointed out.

*Eva Traub Adams' Case:*

Relator was awarded a contract to teach in Sulphur Springs School, but was transferred to Upper Island Creek School. For the school year, she is residing at Griffithsville as she had originally planned. Her home is

in Cabell County. Sulphur Springs, she alleges, is five miles from Griffithsville (respondents say ten miles), and Upper Island Creek is approximately fifteen miles from Griffithsville.

Respondents say this transfer was made necessary by reason of a vacancy arising in the Upper Island Creek School and, by way of further explanation, state that the position left open at Sulphur Springs was readily and conveniently filled by shifting Hazel Carper from Fuquay School, thereby placing her nearer home.

### Edith J. Traub's Case:

Relator is a sister of Eva Traub Adams. They are living together during the school year at Griffithsville. Edith Traub's home is likewise in Cabell County. She was given a contract to teach in Woodville School; which she says is five miles from Griffithsville (respondents say ten miles), and was transferred to Angel Branch, eighteen miles from Griffithsville. Upon receipt of their contracts, this relator and her sister made arrangements to live together, and, since both schools were accessible by automobile and proximately situated, to use the same automobile in going to and from their schools. By reason of the transfer, relator is required to travel thirteen miles by automobile and five miles by train.

Respondents' explanation of this transfer is that a Mrs. Vande Linde had been employed as principal and the relator as teacher in Woodville School; that the patrons of said school requested that the principalship be given to a man in order that stricter discipline might be enforced; that in compliance with this request, the respondents secured a man as principal, demoted Mrs. Vande Linde, with her consent, from principal to teacher and removed the relator; that to provide suitable arrangement for a substitute teacher at Griffithsville, Dorothy Miller was shifted from Angel Branch to Fairview, which is convenient to Griffithsville; and that the relator was then transferred to Angel Branch.

*Oren L. Eckhart's Case:*

Relator, a resident of the village of Tango, contracted as principal of the Tango School. He was transferred to Fairview School with the grade of teacher and at the reduced salary of $6.33 less per month. The respondents recognize liability for the difference in salary. Fairview is two miles from Tango.

The principalship was assigned to Dan McClure, and Meda Chapman was shifted from Fairview to Buckeye, creating the vacancy to which relator was assigned.

Respondents say this transfer became necessary because of the request of patrons and representatives of Fairview that they be given a man teacher.

*Louise Johnston's Case:*

Relator, a resident of Hamlin, contracted to teach in the West Hamlin Graded School, five and one-half miles from her home, on hard surface road. She was transferred to Sias School, twenty miles from her home and three miles off improved road. At West Hamlin, she could have continued to reside at home, but by reason of the transfer she is compelled to seek board and lodging near the school, and she is required to do much more walking than she is physically able for. Relator was replaced at West Hamlin by Lola Evans, who had previously been appointed to the Sias School.

Respondents say that Lola Evans has taught school in Lincoln County for forty-three years; that she lives in West Hamlin and owns her home; that she had taught in West Hamlin the past four years and is supporting a son in college; that relator was single; that the patrons of West Hamlin requested that Lola Evans be returned to West Hamlin; and that these were the motivating facts which caused the respondents to make the exchange.

*Ethel Pickens' Case:*

Relator contracted to teach in the Branchland School and was transferred to Pea Ridge School, which assignment was refused. She is married and resides in Kana-

wha County, but testified that if given the opportunity to teach at Branchland, she would have boarded and lodged with her sister near the school. Rhoda Midkiff, married and living with her husband near Branchland School, was shifted to the latter school from Camp Branch and Mrs. Alpha Franklin, who had been appointed to Six Mile School, replaced Rhoda Midkiff at Camp Branch.

Respondents gave as their reasons for the transfer of relator that it made possible the shifting of the two married teachers whereby they could live at home, and that whereas relator was a non-resident of the county and would find it necessary to pay for accommodations wherever she taught, she was in no wise prejudicially affected by the transfer.

*Summary and Conclusions:*

At the same time that relators were transferred from the schools for which they had contracted, sixty-four other teachers of the elementary schools of Lincoln County were likewise transferred. The above-quoted observation which we made in the *Neal* case, with respect to the wholesale shifting of teachers in disregard of their contracts, is with all the more force applicable here. The fact that between the time of the execution of said contracts and the 30th of August, 1935, when the shifts were made, thirty-four vacancies had arisen due to the resignation of nine teachers and the failure of twenty-five to qualify, necessarily required that substitute appointments be made for the schools affected, but it in no sense justified the transfer of more than twice that many teachers who had full right to expect to teach the schools for which they had contracted, if they so desired. Some of the transferring was done at the request and for the convenience of the teachers transferred. Many others, who did not desire to have their original assignments changed, accepted the shifts rather than engage in litigation.

The White case, wherein there was a charge of incompetence, has been dealt with separately.

In none of the other seven cases was the relator charged with incompetence. Generally speaking, the said changes

were for the convenience of other persons, and, without exception, there was complete disregard of the convenience and desires of the relators.

For discussion, it may be considered that the placement of these eight teachers as of August 30, 1935, would initially have been proper and for the general good of the school system of the county, but the matter cannot be dealt with on that basis. Solemn contract rights had intervened. True, the statute reserves the right in the Board of Education and the county superintendent to make transfers even after contracts have been executed, but such course cannot be justified on the ground of expediency. Nor is suffcient legal reason presented in the mere broad assertion that the changes were for the good of the schools. It must be considered that the good of the schools was carefully deliberated by those in authority when the contracts were entered into with the teachers. When a transfer of a teacher is not of a clearly regulatory nature but involves material alteration of contractual obligations, the statute does not operate as warrant of authority for such course, without his consent. A teacher may not be lightly shorn of the privileges for which he fairly contracted. The fact of seeming advisability under the circumstances of a later hour does not warrant the subordination of initial contract rights. To sustain such subversion under the statute, the emergency must involve much more than that which is merely convenient or expeditious.

For the reasons set forth a peremptory writ of mandamus is awarded in each case.

*Writs awarded.*