CARL L. BEVERLIN

*v.*

THE BOARD OF EDUCATION OF THE COUNTY OF LEWIS, *et al.*

(No. 13583)

Decided June 17, 1975.

*Jones, Williams, West & Jones, James C. West, Jr.* for appellant.

*Billheimer & Losch, Gordon Billheimer* for appellees.

HADEN, CHIEF JUSTICE:

Carl Beverlin moves to reverse a final order of the Circuit Court of Harrison County denying relief upon a writ of certiorari to a prior decision of the Board of

Education of Lewis County which sustained his dismissal as a teacher under contract with that school district. By this writ of error, Beverlin attacks the Board of Education's decision on constitutional grounds and upon the ground that it was arbitrary and capricious. The movant seeks an order from this Court fully restoring him to his former position with further direction that he be awarded back pay from August 26, 1974, the date of his dismissal, to the present.

The material facts in this case are undisputed. Carl Beverlin, who had taught in Lewis County High School during the school year 1973-74, and who was under contract to teach in the same school for the school year 1974-75, decided in the latter part of the week of August 19, 1974, to take an evening class at West Virginia University during the fall semester. Accordingly, he checked with the registrar's office for a time to register and was told that registration was to commence on Monday, August 26, 1974. Although he had not received official notice that the school year was to begin for classroom teachers on August 26, 1974, Mr. Beverlin was aware of the starting date, through conversation with a fellow teacher. Recognizing the conflict between the starting date for school and his need to register for his West Virginia University class and that School Board policy directed that such conflicts be resolved with the principal of the school, Beverlin attempted to contact his principal, Mr. Kinzer, on several occasions prior to August 26. Each effort to reach Mr. Kinzer was unavailing; so he finally tried to reach the assistant principal, Mr. Rovello, but was equally unsuccessful in this effort. Family commitments required that Beverlin go to the home of his mother on Sunday, August 25, 1974, and he did not make further attempt to reach his principal on that date.

On August 26, at about 7:00 o'clock a.m., Beverlin went to Lewis County High School in search of Kinzer. From the experience of the previous year, Beverlin was aware that Kinzer usually arrived early, but on that date he could not find the principal at school. Beverlin

decided to go on to Morgantown for registration and to call back to let Kinzer know where he was. Upon arrival at Morgantown, he tried calling two or more times but received no answer at the high school. He then became engrossed in the business of registering and it was not until 11:45 o'clock a.m. that he again called. On this occasion he was successful in reaching the school and talked with Rovello, the assistant principal, telling him that he would return to school as soon as he finished with registration. At about 2:45 o'clock p.m., or about four and three-fourths hours after school had opened, Beverlin returned to Lewis County High School and checked in with Mr. Kinzer and Mr. Rovello. Beverlin went to his room and proceeded to prepare for the scheduled arrival of his students, some days hence. At about 9:00 o'clock a.m. on August 27, Beverlin, at Kinzer's direction, accompanied Kinzer and Rovello to the Board of Education offices to meet with Superintendent Brown.

In the meeting on August 27, Mr. Brown pointed out the seriousness of Beverlin's absence on the preceding day and, after some discussion, suspended Beverlin on the spot for wilful neglect of duty and insubordination. Brown later testified that his sole basis for the suspension was that Beverlin did not show up for the teachers' meeting on August 26.

By "NOTICE OF CHARGES FOR SUSPENSION AND DISMISSAL", dated August 30, 1974, Glenn L. Brown, as Secretary of the Board of Education of the County of Lewis, a public corporation, notified Beverlin that on August 29, 1974, Glenn L. Brown, as County Superintendent of Schools of Lewis County, presented to the Board the following charge against Beverlin as a teacher and employee of the Board:

"a. You did, on August 26, 1974, fail to report for duty, as directed, without proper authority or notification of your intent to be absent;

"b. You did knowingly and willfully neglect your assigned duties at Lewis County High

School without prevention from doing so by personal illness or other just cause;

"c. You did knowingly and willfully violate school policy.

"These actions constitute willful neglect of duty and insubordination."

By this notice, Beverlin further was informed of his opportunity to be heard at a meeting of the Board to be held on September 18, 1974. At that meeting, following a full evidentiary hearing at which Beverlin was represented by counsel, the Board sustained the superintendent's decision to suspend Beverlin and then dismissed him effective August 26, 1974.

Subsequently, Beverlin applied for a writ of certiorari in the Circuit Court of Lewis County. The judge of that court disqualified himself and the petition was transferred to the Circuit Court of Harrison County by agreement of the parties. That court denied Beverlin's petition, resulting in this appeal.

It is settled in this jurisdiction that a writ of certiorari is a proper procedure for testing the findings of an inferior tribunal. *See, W. Va. Const.*, Art. VIII, § 12, which provides that:

"The circuit courts shall have the supervision and control of all proceedings before justices and other inferior tribunals, by mandamus, prohibition and certiorari."

and *W. Va. Code* 1931, 53-3-2, as amended, which provides, with some exceptions not relevant here, that:

"[I]n every case, matter or proceeding before a county court ... or other inferior tribunal, the record or proceeding may, after a judgment or final order therein, ... be removed by a writ of certiorari to the circuit court of the county in which such judgment was rendered or order made; ...."

More specifically, it is clear that a writ of certiorari is a proper method of challenging a determination by a coun-

ty board of education. In *Board of Education v. Martin*, 112 W. Va. 174, 163 S.E. 850 (1932), this Court held that a board of education is "a tribunal within the meaning of the Constitution, Art. VIII, Sec. 12, and of the statute, Code 1931, 53-3-2," and that the board's decision to dismiss a school employee was subject to review by a circuit court on a writ of certiorari. *Id.* at 180.

Superintendent Brown's authority to suspend a teacher is granted by *W. Va.* Code 1931, 18-4-10(3), as amended, which provides, in part, that:

> "The county superintendent shall:
>
> . . . .
>
> "(3) Assign, transfer, suspend or promote teachers and all other school employees of the district, subject only to the approval of the board, and to recommend to the board their dismissal pursuant to the provisions of this chapter;"

The Lewis County Board of Education derives its power to dismiss an employee from *W. Va. Code* 1931, 18A-2-8, as amended, which provided in part:

> "Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance or wilful neglect of duty, . . . ."

Respondent contends that Beverlin's unexcused absence from meetings, of which he had notice, on the first day of school constituted a "wilful neglect of duty" and also "insubordination" within the meaning of *W. Va. Code* 1931, 18A-2-8, as amended. On the other hand, petitioner argues first, that he was deprived of his constitutional rights of due process and equal protection, and secondly, that the decisions of the superintendent and the Lewis County Board of Education were arbitrary and capricious.

We do not believe this case has constitutional infirmities. Although the petitioner was deprived of a substantial contractual right, such State action as was taken by

the superintendent and the Board of Education satisfies due process requirements. Beverlin was accorded actual notice, a meaningful (albeit unsuccessful) hearing, the opportunity to confront his accusers, assistance of counsel and the availabilities of remedies for review. In that regard, he cannot ask for more. We do not question that Beverlin is entitled to equal protection under the law. He is entitled to treatment that is customarily and regularly given to others in a similar position. *James v. West Virginia Board of Regents*, 322 F.Supp. 217 (S.D. W.Va. 1971). Nevertheless, the fact that some other teachers occasionally left school, without prior permission, because of illness within their families or that the assistant principal once departed school twenty to thirty minutes early to register for classes at West Virginia University, without prior approval or subsequent discipline, does not demonstrate that Beverlin was treated differently and unfairly in comparison with others similarly situate. That evidence does not rise to a level necessary to substantiate a denial of equal protection.

Therefore, in determining whether the circuit court erred in affirming the Board's dismissal of Beverlin, the sole significant issue is whether Superintendent Brown and the Lewis County Board of Education acted arbitrarily and capriciously in suspending and dismissing Beverlin, considering the evidence placed in the record.

There are no West Virginia cases reviewing the suspension and dismissal of a teacher. There are, however, two decisions involving reassignments of teachers which are analogous and persuasive. In *Neal v. Board of Education*, 116 W.Va. 435, 181 S.E. 541 (1935), this Court reversed a board's decision to transfer a teacher. The authority to transfer, like the power to suspend, is conferred by *W. Va. Code* 1931, 18-4-10(3), *supra*. The language of the statute at the time of the *Neal* decision provided that: "The county superintendent shall: ... (3) Assign, transfer, suspend, promote or dismiss teachers subject to the approval of the board; ..." *W. Va. Code* 1931, 18-4-10(3), as amended. The only significant change in this particular provision from the one found in

*W. Va. Code* 1931, 18-4-10(3) *supra,* today is that the superintendent is no longer empowered to dismiss.

Presumably acting under the authority of the statute, the board of education in the *Neal* case decided, without stating reasons but upon the apparent recommendation of the superintendent, to transfer forty-seven teachers in late August to new locations in the county, although the teachers had been previously assigned to various schools in May of the same year. Mr. Neal, one of the aggrieved teachers, was reassigned to a school seventeen miles more distant from his residence. The Court found the transfer to be without justification. In so holding, the interpretation of the superintendent's particular authority to transfer and of his general powers under the predecessor statute in relation to teachers have significance today:

> "Contracts for teaching schools are entered into subject to the exercise of the power conferred on the county superintendent of schools by [18-4-10(3)].... That power, however, may be used only for regulation and in emergencies. Even then, it must be exercised in a reasonable manner. The best interests of the schools must be intended. Arbitrary or capricious use of the power will not be tolerated." *Id.* at 438.

There the Court simply reviewed the facts in reaching its decision and in refusing to apply the "presumption of good faith which is ordinarily accorded an official act." *Id.*

The companion case, *White v. Board of Education,* 117 W. Va. 114, 184 S.E. 264 (1936), was a consolidated proceeding in mandamus involving several teachers who were transferred without their consent from schools to which they had been previously assigned. The Court followed the holding in *Neal* and discussed the transfer power of the superintendent in relation to the teachers' "solemn contractual rights":

> "True, the statute reserves the right in the Board of Education and the county superinten-

dent to make transfers even after contracts have been executed, but such course cannot be justified on the ground of expediency. Nor is sufficient legal reason presented in the mere broad assertion that the changes were for the good of the schools. It must be considered that the good of the schools was carefully deliberated by those in authority when the contracts were entered into with the teachers." *Id.* at 125.

We adopt this Court's previous interpretation in *Neal v. Board of Education, supra,* of a superintendent's statutory powers and share the respect given in *White v. Board of Education, supra,* for a teacher's executed contract. As in *White,* we can assume that the Board of Education had the good of Lewis County High School in mind when they hired Mr. Beverlin for the school year, 1972-73, and when they likewise hired him for 1973-74. Furthermore, if a superintendent's power to transfer must be applied reasonably and, not arbitrarily or capriciously, as determined in *Neal v. Board of Education, supra,* then certainly the authority to revoke a teacher's contract by way of suspension and dismissal, a more potent power, must be exercised also in a reasonable manner. Based on the evidence found in the transcript of the proceedings before the Lewis County Board of Education held September 18, 1974, we believe it was unreasonable for the superintendent to suspend and for the Board of Education to dismiss Beverlin for his actions.

Mr. Beverlin's actions did not support a finding of insubordination and wilful neglect of duty. Although he missed the better part of one school day, his pupils did not suffer his absence, because they were not scheduled to attend classes until later. Moreover, the reason for his absence was to augment his skills with graduate work. When the registrar's office at West Virginia University informed him that registration was August 26 and when he became aware of the conflict with school opening, he made several unsuccessful attempts to notify his principal and assistant principal. Beverlin's un-

excused absence best might be described as an error of judgment, resulting in no harm to his employers. With hindsight, there is no doubt that he should have checked on the possibility of late registration or made certain that the principal knew of his whereabouts. Yet, in *Wysong v. Walden*, 120 W. Va. 122, 129, 196 S.E. 573, 577 (1938), where Lincoln County residents attempted to remove school board members from office, this Court held that "an error of judgment" made by the board members was "not such abuse as to justify removal from office." If a board of education's error of judgment is excusable, so too should a teacher's error be excused.

Therefore, we find that the decisions of Superintendent Brown and the Lewis County Board of Education were arbitrary and capricious on the basis of the record before us. The order of the Circuit Court of Harrison County is reversed and the case is remanded with directions to order reinstatement of Carl Beverlin as a teacher in the Lewis County Public Schools, effective August 26, 1974, to award him the salary as provided in his 1974-75 contract, and to dock him for one day's pay for his unexcused absence on August 26, 1974.

*Reversed and remanded with directions.*

NEELY, JUDGE, *dissenting:*

I must respectfully dissent from the Court's opinion upon the grounds that I do not believe that the courts, in general, are the repositories of all wisdom. The majority opinion concedes that Mr. Beverlin's rights to notice, confrontation, and a fair hearing were vouchsafed and that the exclusive ground for reversing the circuit court and the Board of Education is the majority's disagreement with the substantive result. Under the standard of "arbitrary" any use of discretion by an administrative tribunal can be second guessed by the courts. *W. Va. Code*, 18A-2-8 [1969] permits a county board of education to dismiss a teacher for "willful neglect of duty."

The majority's opinion is yet one more example of the increasing tendency of courts to undermine the ability of those charged with responsibility to discharge their duties in a competent manner. The increasing substitution of court judgment for the judgments of all other decision-makers causes administration to become increasingly chaotic because of paralysis prompted by a surplusage of procedural and substantive due process which leads not to justice but to total incompetence and inability to govern. *W. Va. Code*, 18A-2-8 [1969] provides standards for the dismissal of a teacher including, in the absence of a unanimous decision by the Board of Education, an appeal to the State Superintendent of Schools. Although members of this Court sitting as a board of education might not have found Mr. Beverlin's absence on one day for the purpose of registering at West Virginia University sufficiently willful neglect of duty to warrant discharge, this Court was not elected to the Board of Education of Lewis County and is not charged with administering the overall program for school personnel and students in that county. The safeguards afforded a teacher by the procedural due process requirements of *W. Va. Code*, 18a-2-8 [1969] are far in excess of the procedural safeguards in any private employer-employee relationship, at least in the absence of a collective bargaining agreement. Government, like any other employer, must be able to impose a predictable system of order and discipline upon its employees to insure some efficiency with regard to costs and benefits, without fear of endless litigation, expense, annoyance, and ultimate second guessing by people who have never seen the administrative problems first hand.

In spite of the universally observed fact that employers are not always just with employees and that there is a great deal of arbitrary and capricious enforcement of regulations within any organization designed for production, whether that production generates tangible goods, services, or as in this case, education, there must be some hierarchy of authority to assure a semblance of discipline, and the courts' increasing quest for perfect

justice is likely to produce no great improvement in the quality of decisions, but rather a total lack of any decisions.

In the case at hand it was conclusively demonstrated that Mr. Beverlin was absent from school on a day on which his presence was mandated by his contract, that the rules and regulations of the County Board of Education required a teacher to be present on all working days except in the event of illness or family emergency, and that Mr. Beverlin's absence was willful, in spite of its laudatory purpose. Under those circumstances the County Board of Education's determination that Mr. Beverlin could be dismissed for willful neglect of duty was supported by the evidence and his dismissal was within the sound discretion of the county board. The board followed fair procedures with regard to a hearing and the decision was unanimous. This Court's duty in a situation of this type is exclusively to assure that the statutory standards have been applied by the Board of Education sitting as an administrative tribunal and not to make school board policy.

If we as Americans are at the moment dissatisfied with the permissive and chaotic nature of society in general, then surely one of the reasons for this unfortunate state of affairs is the myopic fascination of courts not only with procedural due process which is within their sphere, but also with substantive due process which, except in extraordinary circumstances, is wholly outside the courts' legitimate sphere in any well reasoned apportionment of governmental powers. Once legislative standards have been established, this Court should have no choice but to enforce the decisions of administrative tribunals operating under them in a lawful manner, and exercising lawful discretion.

I am authorized to say that Mr. Justice Berry joins with me in this dissent.