STATE OF WEST VIRGINIA *ex rel.* LORRAINE HAWKINS

*V.*

THE TYLER COUNTY BOARD OF EDUCATION,

*A Statutory Corporation,* AND

JACKSON L. FLANNIGAN, *Superintendent*

*Of The Tyler County Board Of Education*

(No. 14191)

Decided December 19, 1980.

*Fowler & Paterno, John R. Fowler and John L. MacCorkle,* for plaintiff in error.

*Love, Wise, Robinson & Woodroe, John O. Kizer and Kurt E. Entsminger* for defendant in error.

MCGRAW, JUSTICE:

Lorraine Hawkins appeals from an order of the Circuit Court of Tyler County which dismissed her petition for a

writ of mandamus to compel the appellees, the Tyler County Board of Education, (hereinafter the Board) to reinstate her to her teaching position at Tyler County High School. The petition alleged that the Board acted in an arbitrary and capricious manner in transferring her from her tenured teaching position at Tyler County High School and reassigning her to Paden City Middle School. The circuit court found that the appellees had acted in good faith and in the best interests of the school system and dismissed the petition. We think the lower court erred in its findings and we reverse the order denying the appellant's petition.

The facts of this case are essentially undisputed. The appellant has been employed as a teacher in the Tyler County School system on a continuing contract basis since 1969. Until the Board ordered her transfer in 1977, she taught social studies and physical education at Ellsworth-Boreman Junior High School and at Tyler County High School. From 1973 until 1977, in addition to her regular teaching duties, she was the head coach of the girls' basketball and volleyball teams at Tyler County High School. During the 1975-1976 school year the appellant was asked to coach girls' track but refused. Another teacher was hired to fill that position but she left the school system after one year. In the fall of 1976, the appellant returned to her teaching duties and discovered she had been assigned as the girls' track coach, a duty which she accepted. The Board paid the appellant additional compensation for these coaching duties.

In March of 1977, the appellant wrote a letter to Mr. Jimmy Wyatt, principal of Tyler County High School, requesting that she be relieved of her coaching duties for basketball and track during the 1977-1978 school year. She stated that she felt that coaching three sports would interfere with her curricular teaching duties. She requested that she be allowed to continue as head volleyball coach and expressed her desire to remain at Tyler County High School. Mr. Wyatt received the letter on March 14 and immediately recommended to the Board that the appellant be transferred to another school, apparently in compliance

with an "unofficial" school policy requiring any teacher who resigned a coaching position to be placed upon the transfer list automatically. On March 15, at a regular meeting of the Tyler County Board of Education, the appellant's name was placed on the list for transfer and she was informed that she would be assigned to another school at a subsequent meeting.

On May 10, 1977, Mr. Wyatt approached the appellant and asked her to reconsider her resignation of her coaching duties, indicating that he wanted her to coach basketball and volleyball. The appellant asked the principal if she would be provided with an assistant to help her coach basketball. On May 13, Mr. Wyatt informed her that she would not be getting an assistant basketball coach for the next school year. The appellant then refused to accept the basketball coach position, stating that she "couldn't handle basketball myself because of the program expanding". She did, however, offer to coach volleyball and track without an assistant. Mr. Wyatt again recommended that the Board transfer the appellant to another school and at the Board meeting on May 17, she was reassigned to the Paden City Middle School for the 1977 - 1978 school term.

In a letter dated May 26, the appellant indicated to the Board and to Mr. Wyatt that she could not adequately perform her job without someone to assist her in coaching basketball but that she was willing to remain at Tyler County High School in her previous position, ostensibly as the head coach of three sports, if an assistant were provided. The letter was read at a meeting of the Board on June 7, but no action was taken. On June 10, the appellant instituted sexual discrimination grievance proceedings which, after a hearing before the Board, were resolved against her. The appellant then filed a petition for a writ of mandamus in the Circuit Court of Tyler County High School and a hearing was held on September 15, 1977. Based on findings of fact set forth in a memorandum opinion, the circuit court determined that the Board had acted reasonably and in good faith in transferring the appellant, and entered an order denying the writ and dismissing the proceedings at the cost of the appellant. It

is from this order that the appellant appeals, contending that the lower court erred in not finding that her transfer was the result of arbitrary and capricious conduct on the part of the Board.

The county boards of education are granted authority by statute to transfer teachers. The Code provision in effect at the time of appellant's transfer provides: "The superintendent, subject only to approval of the board, shall have authority to assign, transfer, promote, demote or suspend school personnel and to recommend their dismissal pursuant to provisions of this chapter . . ." W. Va. Code § 18A-2-7 [1969]. This provision vests great discretion in the county superintendent and the county board of education to transfer and assign teachers to designated schools and this Court will not interfere with the exercise of that discretion where such action is taken in good faith for the benefit of the school system and is not arbitrary. *Bates v. Board of Education of Mineral County*, 133 W. Va. 225, 55 S.E.2d 777 (1949); *Weaver v. Board of Education of Calhoun County*, 128 W. Va. 42, 35 S.E.2d 679 (1945). Teachers have no vested right to be assigned to any particular school in the county. *Weaver, supra.* However, the power of the county superintendent to transfer teachers must be exercised in a reasonable manner and in the best interests of the schools. Arbitrary and capricious use of the power will not be permitted. *Beverlin v. Board of Education of Lewis County*, 158 W. Va. 1067, 216 S.E.2d 554 (1975); *Neal v. Board of Education of Putnam County*, 116 W. Va. 435, 181 S.E. 541 (1935). Mandamus will lie to control a board of education in the exercise of its discretion only upon a showing of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive or misapprehension of the law. *State ex rel. Withers v. Board of Education of Mason County*, 153 W. Va. 867, 172 S.E.2d 796 (1970); *State ex rel. Payne v. Board of Education of Jefferson County*, 135 W. Va. 349, 63 S.E.2d 579 (1951).

The appellant contends that the Board's action was arbitrary and capricious because it resulted from her refusal to assume coaching duties in violation of county

policy. Appellant first refers to the following provision of the Tyler County Policy Manual:

"5.16.48: No coach shall serve in the position of head coach in more than two (2) sports."

The appellant maintained below that she was transferred to another school because she refused to coach three sports. She contends that because her transfer was predicated upon her refusal to violate county policy, it was invalid.

We agree with the appellant's theory that the transfer or reassignment of a teacher by a county board of education for his or her refusal to violate county policy is an arbitrary or capricious act. County boards of education are bound by procedures they properly establish to conduct their affairs. *Powell v. Brown*, 160 W. Va. 723, 238 S.E.2d 220 (1977). There is no statutory provision regulating the assignment of extracurricular duties to teachers, nor does there appear to be a state policy in that regard. In such circumstances policies of the county boards of education are binding upon them and a teacher may not be transferred for refusing to disobey such policies.

Here, however, it does not appear that the appellant's refusal to coach three sports was the reason for her transfer. The Board maintains that she was transferred because of her refusal to coach one particular sport—basketball. The evidence appears to support this contention. When the appellant spoke with Mr. Wyatt about reconsidering her resignation, his concern appeared to be that she coach the two major girls' sports of basketball and volleyball, rather than that she coach all three of the girls' sports. Indeed, Mr. Wyatt's recommendation that the appellant be placed on the transfer list appeared to be predicated only upon her refusal to accept the head basketball coach position at Tyler County High School, without regard to her resignation of coaching duties in other sports. We cannot say that the circuit court was clearly wrong in finding that the appellant's transfer was not the result of her refusal to violate county policy by coaching three sports.

A question remains, however: Could the Board lawfully reassign the appellant to another school because of her refusal to coach basketball? We have never decided the question of whether a county board of education can require teachers to assume extracurricular duties in addition to their classroom responsibilities. The majority of jurisdictions which have decided this issue have held that not only may teachers be assigned reasonable extracurricular duties, but that they may be discharged for refusing to accept such assignments. *Neal v. School District of York*, 205 Neb. 558, 288 N.W.2d 725 (1980); *Board of Education of Asbury Park v. Asbury Park Education Association*, 145 N.J.Super. 495, 368 A.2d 396 (1976); *Parrish v. Moss*, 200 Misc. 375, 106 N.Y.S.2d 577 (1951); *Pease v. Millcreek Township School District*, 412 Pa. 738, 195 A.2d 104 (1963); *Goodwin v. Bennet County Independent School District*, 88 S.D. 639, 226 N.W.2d 166 (1975); *McCullogh v, Cashmere School District No. 222*, 15 Wash. App. 730, 551 P.2d 1046 (1976).

The reasonableness of such rule seems clear to us. Extracurricular activities have come to be accepted as an important part of a child's educational program. "We have come to regard education—not as a development of a part of the faculties, but of all of them—the intellectual, the moral, as well as the physical." (Citation omitted.) *Rhoades v. School District No. 9*, 115 Mont. 352, 142 P.2d 890 (1943). Activities such as band, athletics, clubs, cultural and social events are essential to the total development of the child. "Learning and self-realization cannot take place in a vacuum; rather, they are fostered in an atmosphere of social interaction and furthered by the development of a healthy group orientation." *Board of Education of Asbury Park, supra* at 401-402. The State Superintendent of Schools has noted as much in the Standards for Classification of Schools approved by the State Board of Education. In a statement of policy regarding school activities, the State Board approved the following language:

"School activities are an important part of the secondary schools.

* * *

Recreational and social activities must have a prominent place in the secondary school. Wholesome activities cooperatively planned and developed with and for all of the student body is a vital part of a good school." *Secondary Schools Standards for Classification,* Part II, "Organization and Administration Secondard Schools" § D (approved May 16, 1969, reprinted 1979.)

The teacher is an integral part of such an educational program. As was noted in *Parrish v. Moss, supra,* "[t]he day in which the concept was held that teaching duty was limited to classroom instruction has long since passed. Children are being trained for citizenship and the inspiration and leadership in such training is the teacher." 106 N.Y.S.2d st 584. "Teachers, therefore, in order to properly fulfill the responsibility they have undertaken to their profession, to their students, and to the community, must necessarily perform those activities deemed necessary and assigned to them by the board of education." *Board of Education of Asbury Park, supra* at 402. We are of the opinion that the assignment of teachers to extracurricular duties is a matter of educational policy within the discretion of the county boards of education. *See Neal v. School District of York, supra; Long Branch Education Association v. Board of Education of the City of Long Branch,* 150 N.J. Super. 262, 375 A.2d 668 (1978); *Goodwin v. Bennet County Independent School District, supra; Parrish v. Moss, supra.*

However, the board of education's power to assign extracurricular duties to teachers is not unlimited and must be exercised in a reasonable manner. Assignments must be nondiscriminatory, related to a teacher's interest and expertise, and must not require excessive hours beyond the contractual workday. *Board of Education of Asbury Park Education Association,* 145 N.J. Super. 495, 368 A.2d 396 (1976); *Parrish v. Moss,* 200 Misc. 375, 106 N.Y.S.2d 577 (1951); *Pease v. Millcreek Township School District,* 412 Pa. 738, 195 A.2d 104 (1963); *McCullogh v. Cashmere School District No. 222,* 15 Wash. App. 730, 551 P.2d 1046 (1976). We do not think it is unreasonable for the

school system to request a teacher of physical education to coach extracurricular athletic activities. Such duties commonly are within the expertise of the teacher and are such that the teacher is qualified to direct them. We do not think that the fact that coaching may require more of a teacher's time than other extracurricular activities renders the assignment of such duties discriminatory so long as an effort is made to distribute other extracurricular responsibilities uniformly to other teachers and special compensation is paid to those teachers required to spend more than a de minimus amount of time, beyond the contractual workday, in the direction of activities assigned to them.[1]

If, however, the assignment of extracurricular activities places such a burden on the teacher's time as to interfere with his or her primary instructional duties and to reduce his or her classroom efficiency, such an assignment is unreasonable and a teacher is justified in refusing to accept those duties. The Tyler County Board of Education appears to have recognized the validity of this limitation on its power. The Tyler County Policy Manual provides in section 5.15.4:

> "The principal shall be very careful not to overload teachers with extracurricular duties to the point that they interfere with their instructional efficiency."

The second part of the appellant's claim that she was transferred as a result of her attempts to adhere to county policy is grounded upon this policy statement.

---

[1] West Virginia Board of Education Policy Statement No. 5210 (adopted April 13, 1965) provides:

"Regular school day" shall not exceed eight hours of school duty in one day nor more than forty hours of school duty each week. Assignment to school duty is considered to be the interval a teacher is required to be present to perform curricular or co-curricular services.

Compensation for teachers who are assigned duties in addition to their regular instructional duties wherein such non-instructional duties are not a part of the regular school day shall be set by the county board of education and applied uniformly within each county.

The record shows that the year the appellant coached three sports she was involved in coaching activities from the first day of school in the fall, when the basketball season began, until May 21st, when the track season ended. She testified that practice after school would end at 5:30 or 6:00 p.m. and that on nights when games were played she sometimes would not finish until 11:30 p.m. or 12:00 a.m. In addition, the appellant had been assigned as the Junior class sponsor, a position which involved organizing and raising money for the Junior-Senior prom. She testified that the fund-raising usually begins in October and that the advisor is occupied with arrangements until the prom is held in May. These responsibilities were all in addition to the appellant's regular classroom duties, which involved teaching six hours during the regular school day.

When the appellant resigned her coaching positions, her stated reason was that they required too much time and interfered with her instructional performance. She testified that she was exhausted by the schedule, that she was occasionally unable to prepare for classes, and that she found herself giving the students more work they could do at their desks. When the appellant was approached by Mr. Wyatt and asked to coach basketball and volleyball, she told him that even without the added responsibility of coaching track, the demands of the basketball coaching position were too time consuming to permit her to perform all of her duties adequately unless an assistant was provided. She repeated her belief to the Board that coaching basketball without an assistant would interfere with her teaching duties after she had been placed on the transfer list. In spite of the appellant's protests that she could not adequately perform all of the duties requested of her without assistance, it appears that neither the principal nor the Board made any inquiry into whether the assumption of the basketball coaching position was an unreasonable imposition on the appellant's instructional duties.[2] Nor does it appear that any serious attempt was

---

[2] The grievance procedure examiner did make a finding that "no conclusion could be reached [with respect to the effect of the

made to determine whether her request that an assistant be provided was unreasonable.

The circuit court made no findings as to whether the assignment of the basketball coaching position to the appellant unreasonably interfered with her instructional efficiency. We think the evidence in the record is sufficient to justify an inquiry into the matter. We therefore remand the case to the circuit court to make findings of fact on the issue. If it appears that the appellant was justified in her refusal to accept duties and responsibilities which adversely affected her classroom teaching abilities in violation of county policy, then the Board acted arbitrarily and capriciously in ordering the appellant reassigned to another school. If it is determined that the coaching duties assigned the appellant were reasonable and did not violate county policy then the transfer was within the Board's power.

The next issue with which we must deal is the finding by the circuit court that one of the duties of the female physical education teacher at Tyler County High School was to coach the girls' basketball team. This conclusion was apparently based on two assertions by the Board: (1) that "unofficial" county policy dictated that only teachers certified to teach physical education could coach sports, and (2) that acceptance of the basketball coaching position was a condition of appellant's employment.

First, we do not think that the Board may rely on "unofficial" policies to support their contentions. We can understand the desirability of having an athletic coach who is also qualified to teach physical education. As we noted earlier, the two activities are closely related. We note, however, that neither the Code nor the State Department of Education regulations requires an athletic coach to possess a teaching certificate in any particular field. There is nothing on the record to indicate that the Tyler County Board of Education required such qualifications except by "unofficial" policy. Indeed, it appears that this "unofficial"

extracurricular duties or her classroom responsibilities] without extensive research."

policy was not even applied consistently, as evidenced by the fact that the appellant was reassigned to Paden City Middle School as a physical education teacher but was not assigned any coaching duties, those activities having been delegated to other teachers at the school. If the Board wishes to make certification in a teaching field a qualification for performing extracurricular duties it must do so by means of an *official* policy decision which will be applied uniformly throughout the county.

The Board's assertion, that coaching the girls' basketball team was a condition of the appellant's employment, is not supported by the record. Testimony below indicated that the appellant had never been told that coaching basketball was a requirement of her teaching job. More importantly, it appears that no such condition was ever made part of the appellant's contract of employment.[3] In such circumstances, we do not think the Board can rely on the argument that the appellant's transfer was reasonable because she failed to fulfill the conditions of her employment.

The relation between the county board of education and school teachers is a contractual one. If the board wishes to hire a teacher it must do so by means of a written contract. W. Va. Code § 18A-2-2; *Knotts v. Board of Education*, 113 W. Va. 56, 166 S.E. 703 (1932). The county boards may negotiate with teachers and place conditions, such as the assumption of extracurricular duties, upon the employment of any teacher. However, when the board attempts to make the performance of such conditions a term of a teacher's employment, it must do so by means of a provision in the teacher's written contract. Absent such a provision the county board cannot order the transfer, suspension or dismissal of teachers on contractual grounds for refusal to perform additional duties. The board need not include every possible activity a teacher might be required to

---

[3] Although we do not have appellant's contract before us, we note that the Board at no time contended that her contract bound her to coach athletics and that appellant testified that coaching was not a condition of her employment. On this record, we must assume that appellant's contract did not contain such a condition of employment.

undertake as part of his or her employment. The contract should, however, contain a provision establishing any specific conditions upon which the teacher's employment is premised.

Indeed, it appears to us that before a county board of education can compel a teacher to undertake any extracurricular duties which place disproportionate demands on the teacher's time outside the regular school day activities or which warrant special compensation, it must present the teacher with a written contract delineating the nature of the duties to be performed and the compensation to be paid therefor. If the board of education is unwilling to include the assignment of specific extracurricular activities to specific teachers in their continuing contracts, it has the authority to execute separate contracts "to employ such general and special supervisors or directors of instruction and of such other educational activities as may be deemed necessary". W. Va. Code § 18-5-32. The county boards are given discretion under this provision to determine the period of employment. Thus, the board may place teachers under separate contract to perform extracurricular duties such as coaching for a specified period of time without making such performance a condition of continuing employment and may take action with respect to teachers who fail or refuse to perform their contractual obligations. Only in this manner can both teachers and county boards of education be protected from the unreasonable demands and arbitrary conduct that naturally arise from informal or "unofficial" agreements as to the duties to be performed by teachers in or out of the classroom. We are of the opinion that the circuit court was clearly wrong in concluding that coaching the girls' basketball team was one of the appellant's duties as the female physical education teacher and we reverse the ruling of the circuit court insofar as it was based on that conclusion.

The appellant's next assignment of error is that the Board acted arbitrarily and capriciously in not providing her with an evaluation and improvement period as required by West Virginia Board of Education Policy No.

5300(6)(a) and *Trimboli v. Board of Education of Wayne County*, 163 W. Va. 1, 254 S.E.2d 561 (1979). Policy No. 5300 provides, in pertinent part:

> (6)(a) Every employee is entitled to know how well he is performing his job, and should be offered the opportunity of open and honest evaluation of his performance on a regular basis. Any decision concerning promotion, demotion, transfer, or termination of employment should be based upon such evaluation and not upon factors extraneous thereto. Every employee is entitled to the opportunity of improving his job performance, prior to the terminating or transferring of his services, and can only do so with assistance of regular evaluation.

In *Trimboli, supra*, we held that 5300(6)(a) "prohibits [the] board from discharging, demoting or transferring an employee for reasons having to do with prior misconduct or imcompetency that has not been called to the attention of the employee through evaluation, and which is correctable". Syl. pt. 3, *Trimboli v. Board of Education, supra*. There is no basis for the contention that the appellant was transferred on grounds of prior misconduct or incompetency. Indeed, it is admitted that the Board had no complaint concerning the appellant's competence in performing her teaching and coaching duties and we are left with the impression that she was transferred for her strengths as a teacher. We conclude therefore that the Board did not act arbitrarily in not granting the appellant 5300(6)(a) procedures of evaluation and an improvement period.

The appellant's final assignment of error is that the lower court erred in finding that she had not been discriminated against on the basis of sex. While we are sympathetic to claims of sex discrimination which come before this Court, *see, e.g., Peters v. Narick*, 165 W. Va. 622, 270 S.E.2d 760 (1980); *Coffindaffer v. Coffindaffer*, 161 W. Va. 557, 244 S.E.2d 338 (1978), in order to merit attention, such claims must be properly presented and must fairly arise on the record. W. Va. Const. art. VIII, § 4. It does not appear that the appellant's discrimination claim meets these

criteria and we are prohibited therefore from commenting upon them.

It does not appear to us that the appellant filed a discrimination claim with the West Virginia Human Rights Commission under the provisions of Chapter 5, article 11 of the West Virginia Code, although she claims illegal discrimination under that article. The appellant did file a sex discrimination grievance complaint under 20 U.S.C.A. § 1681 *et seq.*, commonly known as Title IX of the Education Amendments of 1972. She pursued her grievance proceeding up to a determination by the grievance commissioner that she was not entitled to relief. She apparently did not appeal those findings, but began new proceedings below on petition for writ of mandamus in this action. It also appears that the provisions of Title IX do not entitle the appellant to relief in that that statute has been held not to apply to employment discrimination on the basis of sex. *See, Romeo Community School v. H.E.W.*, 600 F.2d 581 (6th Cir. 1979), *Junior College Dist. v. Califano*, 597 F.2d 119 (8th Cir. 1979); *Isleboro School Committee v. Califano*, 593 F.2d 424 (1st Cir. 1979).

This is not to say that we think the appellant does not have a valid discrimination claim. It is entirely possible that a record can be made to support her contention which, when properly presented before the appropriate state or federal agency or court, will be sufficient to entitle her to relief. We merely conclude that her right to relief on the ground of sex discrimination does not fairly arise from the somewhat confused record before us and is therefore not properly before this Court.[4]

---

[4] The record also is confused as to how the Board discriminated against the appellant. In one instance, she claims that she was discriminated against because the Board would not hire male teachers to coach female sports. The claim of discrimination here does not belong to the appellant but rather to the male teachers who were not hired on the basis of their sex. The appellant also claims that she was discriminated against because male coaches were permitted to hire coaching assistants while she was not. The circuit court found that differences in the size of the girls' and boys' athletic programs justified the disparity in hiring of assistants. The appellant says nothing on the

We hold therefore that the circuit court was clearly wrong in finding that the Tyler County Board of Education did not act in an arbitrary and capricious manner in transferring the appellant from her teaching position at Tyler County High School and reassigning her to a position at Paden City Middle School. We reverse the order of the Circuit Court of Tyler County denying the writ of mandamus prayed for and remand the case to that court for further proceedings consonant with the principles set forth above.

*Reversed and remanded.*

NEELY, JUSTICE, *dissenting:*

I dissent from the majority opinion on the grounds that the appellant was initially hired as a teacher with the understanding that she was to coach girls' sports. Notwithstanding the aversion which the intellectual elite may have to the prominence of athletics in public education, nonetheless, athletics is an important vehicle for communication with and instruction of children. Unless a teenage child has an interest in something, whether it be athletics, academics, the performing arts, or a hobby like magic, the child will end up first on the streets and then in juvenile court.

The resources of the schools are limited and the State's educational budget does not permit the hiring of teachers to coach exclusively. Like any private employer, the school system should be entitled to employ those persons who will be the most productive among those available for positions. The teacher in the case before us was not discharged; she was merely reassigned to another school to permit a more productive teacher, i.e., one willing to undertake important extracurricular activities, to be employed where needed. How are the boards of education and the superintendents of schools to run a thorough and efficient system of state

record before us or in her pleadings or brief to discount this ruling of the circuit court. The appellant's final claim of discrimination was based on her allegation that she was required to coach three sports while male coaches were required to coach no more than two sports. We have already spoken to that issue.

schools if the courts deny them the opportunity to get the biggest possible bang for the educational buck? The facts of this case are directly at odds with syl. pt. 1 of the majority opinion since the appellant was transferred because of her refusal to coach girls' basketball, the most important winter sport in any West Virginia high school, and not for her refusal to coach three sports. Furthermore, a close reading of the record indicates that when the appellant was originally hired she was employed with the understanding that she would coach girls' basketball and it was for that reason that she was assigned to the high school in the first place. The record shows that the appellant refused to coach girls' basketball; the Board was not at all concerned with whether she would coach volleyball or track. Had she declined to coach either of the latter but accepted basketball she would not have been transferred.

There are occasions when administrative agencies obviously act in an "arbitrary and capricious" fashion; however, far more often that legal expression "arbitrary and capricious" is used when courts wish to substitute their judgment for the judgment of the duly constituted administrative agency. The fact that a court disagrees with a particular administrative action does not necessarily mean that the action was "arbitrary and capricious." Furthermore, what do courts know about running the schools? As I have pointed out in numerous other dissents on school matters, outrageous as the proposition may be, schools should be run for the benefit of children and not for the benefit of the administrators or employees in the system. The children of West Virginia are entitled to conscientious and effective coaching as well as leadership in other important extracurricular activities. While the children of judges may come from families where mothers don't work and the fathers take up their leisure instructing and informing the young, many of the children in this State are dependent upon the care, direction, and guidance of teachers in the schools who, from love of their jobs and service to both their Creator and the State, are willing to work long hours for low pay. Whenever a teacher who won't work can be replaced by a board of education with a teacher

who will work, I think that making such a replacement is hardly an "arbitrary and capricious" act, but rather the most rational act that any board of education can make.

I am authorized to say that Justice Miller joins in this dissent.