SOUTHWESTERN COMMUNITY
ACTION COUNCIL, INC., a
corporation, Plaintiff,

v.

COMMUNITY SERVICES
ADMINISTRATION,
Defendant.

Civ. A. No. 76–0351–H.

United States District Court,
S. D. West Virginia,
Huntington Division.

Dec. 13, 1978.

James R. Bailes, C. F. Bagley, III, Huntington, W. Va., for plaintiff.

Rebecca A. Betts, Asst. U. S. Atty., Charleston, W. Va., Ian Fan, Community Services, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

In this action for declaratory judgment Southwestern Community Action Council, Inc., a corporation organized and existing under the laws of the State of West Virginia, seeks a determination of the validity of a regulation promulgated by Defendant Community Services Administration. The regulation, OEO Instruction 6900–01, issued pursuant to 42 U.S.C. § 2796, governs the employment policies of Plaintiff with regard to conflicts of interest and nepotism. The regulation as applied by Defendant requires Plaintiff to dismiss either Della Martin, an employee, or Richard Martin, its Board Chairman, as a result of their marriage.

Defendant Community Services Administration (CSA) is the government anti-poverty agency, originally established in 1964 as the Office of Economic Opportunity (OEO) pursuant to the Economic Opportunity Act of 1964, as amended (Act), 42 U.S.C. §§ 2701–2996e. Title II of the Act, 42 U.S.C. §§ 2781–2837 establishes community action agencies (CAAs) to provide services to low income families.

CAAs are State or political subdivisions of a State or non-profit organizations designated by a State or political subdivision which plan and conduct community action programs in accordance with the Act. 42 U.S.C. § 2790. The purpose of these programs is to enable low income families to become more fully self-sufficient and to help alleviate poverty in the community. Plaintiff Southwestern Community Action Council, Inc. (Southwestern) is the CAA for Wayne, Cabell, Lincoln, and Mason Counties in West Virginia. As such it receives federal assistance under Title II of the Act.

OEO Instruction 6900–01 prohibits the employment of a person by a CAA in a job over which a member of that person's immediate family exercises supervisory authority or serves on a board or committee with authority to order personnel actions affecting his job. This action arose after Defendant's regional counsel notified Plaintiff that the marriage of Della Martin, an employee of Southwestern, and Richard Martin, Chairman of the Board of Directors of Southwestern created a violation of OEO Instruction 6900–01 in that Richard Martin had supervisory authority over Della Martin while they occupied the status of husband and wife.

The Martins were married in 1973, and the record reflects that some attempts were

made at that time on the part of Plaintiff to resolve the conflict. These attempts were unsuccessful, however, and in August of 1976, Defendant's counsel notified Plaintiff that CSA would withhold its authorization to release funds to Plaintiff unless it either terminated the employment of Della Martin or caused the removal of Richard Martin from Southwestern's Board of Directors.

By agreement between the parties CSA agreed to continue to authorize funds to allow Plaintiff time to seek a declaratory judgment in the cases of Richard and Della Martin. Plaintiff then instituted this action.

Presently pending before this Court are cross motions for summary judgment. Both Plaintiff and Defendant have submitted memorandums in support of their respective motions. The issues before the Court have been briefed by both parties and may be summarized as follows:

(1) Whether Plaintiff has standing to maintain this suit.

(2) Whether OEO Instruction 6900–01 is inconsistent with the purpose and intent of 42 U.S.C. § 2796 and exceeds the authority granted thereby.

(3) Whether OEO Instruction 6900–01 unconstitutionally impinges on the fundamental right to marry.

(4) Whether enforcement of OEO Instruction 6900–01 would constitute discrimination on the basis of sex in violation of the Civil Rights Act of 1964, as amended.

(5) Whether Defendant has waived or should be required to waive application of OEO Instruction 6900–01 in the circumstances here involved.

(6) Whether a genuine issue of material fact exists as to the alleged waiver of OEO Instruction 6900–01.

## I.

■ At the outset, the Court will dismiss as without merit Plaintiff's contention that enforcement of OEO Instruction 6900–01 would constitute discrimination on the basis of sex in violation of the Civil Rights Act of 1964, as amended. Plaintiff argues that to comply with OEO Instruction 6900–01 would require the dismissal of Della Martin in this case and ultimately widespread dismissal of female employees.

Plaintiff has misinterpreted the regulation. OEO Instruction 6900–01 concerns itself with conflicts of interests between members of an immediate family, of which husband and wife is only one category. The Court can envision situations where violations of the regulation could occur and both family members be of the same sex, e. g., father and son or two sisters. Additionally there is no indication in the records that Defendant's instructions to Plaintiff require it to dismiss Della Martin as opposed to Richard Martin. *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514; *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583; *Johnson v. United States,* 422 F.Supp. 958 (N.D.Ind.1976) aff'd. sub nom. *Barter v. United States,* 550 F.2d 1239 (7th Cir. 1977) cert. denied 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755.

## II.

In moving for summary judgment Defendant contends inter alia that Southwestern does not have standing to maintain this suit. Defendant asserts correctly that the pivotal question in this case is whether the regulation in question unconstitutionally infringes upon the right and freedom of the Martins to marry. Defendant argues that only the Martins, who are not parties to this action, have standing to raise this claim.

■ Standing involves the question of whether Plaintiff is entitled to bring its complaint before a federal court. *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Art. III of the Constitution limits the exercise of federal judicial power to actual cases and controversies. A plaintiff can invoke the judicial process only when he can show that he himself has suffered some threatened or actual injury resulting from the putatively illegal action of the defendant.

*Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

To satisfy the Art. III requirement of standing that Plaintiff make out an actual case or controversy between himself and the Defendant requires that Plaintiff allege " 'such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin, supra* at 498–499, 95 S.Ct. at 2205 (emphasis in original). The relevant inquiry is whether Plaintiff has shown "an injury to himself that is likely to be redressed by a favorable decision." *Simon v. Eastern Ky. Welfare Rights Org., supra,* 426 U.S. at 38, 96 S.Ct. at 1924.

■ Apart from the Constitutional considerations of Art. III there are certain prudential limitations on the exercise of federal court jurisdiction that affect the standing question. The prudential aspect of standing involves the question of whether Plaintiff is the proper proponent of the particular legal rights on which he bases his suit. *Singleton v. Wulff,* 428 U.S. 106, 112, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Prudential rules of standing are essentially matters of "judicial self-governance" grounded in the concern for what is the "proper—and properly limited—role of courts in a democratic society" and serve to limit who may invoke the court's decisional and remedial powers. *Warth v. Seldin, supra,* 422 U.S. at 498, 95 S.Ct. at 2205.

Even when Plaintiff has alleged injury sufficient to meet the "case or controversy requirement", it has been held that the Plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin, supra* at 499, 95 S.Ct. 2197. The rule is based upon the consideration that federal courts should not unnecessarily adjudicate the rights of third parties, and that if such rights are actually called into issue, the third parties themselves usually will be the best proponent of their own rights. *Singleton v. Wulff, supra.*

■ The rule is not all-pervasive, however, and courts have not required its application where the underlying justifications are absent. Where the activity Plaintiff wishes to pursue or the interests he seeks to protect are inextricably bound up with the third party right or where Plaintiff is an effective proponent of the right as the third party, courts have found the rule inapplicable. *Singleton v. Wulff, supra; Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). But, as *Singleton* points out, the ability of the third party to assert his own right is an important factual element in making this determination, and even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply. 428 U.S. at 116, 96 S.Ct. 2868.

It seems clear that Southwestern has established the "case or controversy" requirement of Art. III, for there is no doubt that Plaintiff will suffer concrete injury if the challenged regulation is upheld. It will have to discharge either its Board Chairman or a valued employee. Alternatively the threatened action by Defendant would terminate the federal assistance to which Plaintiff is entitled. Clearly this is an injury that is likely to be redressed by a favorable decision. *Simon v. Eastern Ky. Welfare Rights Org., supra.*

The more difficult question concerns itself with what rights Plaintiff may assert to resolve the controversy. In its complaint Plaintiff alleges that dismissal of either of the Martins would impede the performance of its programs. Plaintiff's main argument, however, centers on the assertion that the regulation is violative of the Due Process Clause, in that it infringes upon the Martins' fundamental right to marry.

To determine if the assertion of these claims gives Plaintiff standing, the Court must look to the prudential limitations on the exercise of federal court jurisdiction to see if Plaintiff may be considered the proper proponent of these legal rights. *Singleton v. Wulff, supra.*

Certainly, Plaintiff has a clear interest in the manner in which its programs are administered, and also, it appears that Plaintiff has alleged a proper concern with statutes governing its own composition and an interest of a substantial nature in the continuation in their respective positions of two of its employees, one of whom is clearly disqualified by the regulation.

The Fifth Circuit in *State of Florida v. Weinberger*, 492 F.2d 488 (5th Cir. 1974), held that concerns such as these gave standing to the State of Florida and to that state's licensing board for nursing home administrators to challenge an HEW regulation redefining composition of the licensing board that would have required the dismissal of two board members. The Court found that the interests of the licensing board in its own composition and in the continuation in office of its present members was an interest "arguably within the zone of interest to be regulated or protected by the statute under consideration." *State of Florida v. Weinberger, supra* at 494.

■ A finding that Plaintiff's interests are inextricably bound up with the third party rights he wishes to assert does not end the inquiry. The Court, before conferring standing upon Plaintiff, must also find that the general rule requiring persons to assert their own rights does not apply. *Singleton v. Wulff, supra*. The underlying rationale for this policy, as noted earlier, is to insure effective advocacy before the courts.

Richard Martin is Chairman of the Board of Directors of Plaintiff corporation. As such he will no doubt be intimately involved with the pursuit of this claim. The underlying justification for the rule is absent here, and the Court finds that there would be little loss in terms of effective advocacy from allowing Southwestern to assert the Martins' right to marry in support of its claim.

■ For these reasons the Court concludes that Plaintiff does have standing to bring this action and to assert the constitutional infringement of the Martins' right to marry as well as its right to continue to operate its programs unimpeded by the loss of a valuable employee.

## III.

The Court now turns to the argument advanced by Plaintiff that OEO Instruction 6900–01 is inconsistent with the purpose and intent of 42 U.S.C. § 2796 and exceeds the authority granted thereby.

42 U.S.C. § 2796 provides in pertinent part:

"(a) Each community action agency shall observe, . . . standards of organization, management and administration which will assure . . . that all program activities are conducted in a manner . . . free of any taint of partisan political bias or personal or family favoritism.

(b) The Director shall prescribe rules or regulations to supplement subsection (a), which shall be binding on all agencies carrying on community action program activities with financial assistance under this title."

Pursuant to this directive and the general empowering provision of the Act, 42 U.S.C. § 2942(n), the Director issued OEO Instruction 6900–01. Part C of that Instruction concerns "Conditions Governing Employment." Section 4 of Part C deals with "Rules Governing Conflict of Interest and Nepotism":

"The following rules shall be observed with respect to persons whose employment is supported by OEO funds or by contribution to the non-Federal share:

a. No person shall hold a job while he or a member of his immediate family serves on a board or committee of a grantee or delegate agency if that board or committee has authority to order personnel actions affecting his job.

b. No person shall hold a job over which a member of his immediate family exercises supervisory authority.

c. No person shall hold a job while either he or a member of his immediate family serves on a board or committee which, either by rule or by prac-

tice, regularly nominates, recommends, or screens candidates for the agency or program by which he is employed. For purposes of this PART, a member of an immediate family shall include any of the following persons:

| | |
|---|---|
| Husband | Wife |
| Father | Father-in-law |
| Mother | Mother-in-law |
| Brother | Brother-in-law |
| Sister | Sister-in-law |
| Son | Son-in-law |
| Daughter | Daughter-in-law |

Grantee and delegate agencies not in compliance with these rules on the effective date of this memorandum may apply to the appropriate OEO Regional Office for a temporary waiver of the rule and permission to phase compliance over a period of time. Such a request shall include a plan for accomplishing the required compliance and a deadline for its completion."

The standard to be applied in determining whether Defendant exceeded the authority delegated to it under the Economic Opportunity Act of 1964, as amended, is well-established:

"Where the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.'" *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973) quoting *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 280–281, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). See also *American Trucking Assns. v. United States*, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953).

The empowering provision of the Economic Opportunity Act of 1964, as amended, contains very similar language to that quoted, and the Court cannot agree that the regulation is not "reasonably related to the purposes of the enabling legislation."

*Mourning v. Family Publications Service, Inc., supra.*

Congress was aware of the importance and indeed, the necessity of administering anti-poverty programs on a non-partisan basis free of any favoritism if they were to be effective. Too many times federal programs have become the subjects of political patronage and family favoritism. By enacting 42 U.S.C. § 2796 Congress was taking a direct step to avoid such results in community action programs.

Congress did not attempt, in enacting the statute, to enumerate all those situations where conflicts of interest or family favoritism might occur. Rather, Congress delegated that task to the discretion of the Director, 42 U.S.C. § 2796(b). It is a well established principle that Congress has the power to vest broad rule making authority in administrative agencies. *Mourning v. Family Publications Service, Inc., supra; American Trucking Assns. v. United States, supra.*

It is important to note that the regulation does not impose a blanket prohibition upon marriage between persons working within community action programs. It is only where such a relationship could give rise to personal conflicts of interest or nepotism that the regulation operates. That some different manner of enforcing the statute might have been available or even preferable is irrelevant. In *Mourning v. Family Publications Service, Inc., supra,* the Court reaffirmed its position that "where reasonable minds may differ as to which of several remedial measures should be chosen, courts should defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority." 411 U.S. at 371–372, 93 S.Ct. at 1662.

Plaintiff contends that the statute is directed only at instances of actual wrongdoing or conflicts of interest, and therefore, the regulation promulgated under it is overbroad. With this the Court cannot agree. The statute requires that agencies observe "standards of organization . . . which will assure . . . that all program ac-

tivities are conducted . . . free of any taint of . . . personal or family favoritism. 42 U.S.C. § 2796(a). The Court finds that this language clearly encompasses measures taken to prevent conflicts of interest from occurring as well as measures to correct any instances of actual wrongdoing.

Plaintiff argues that the regulation is overbroad because it affects individuals who have shown no personal or family favoritism and thus need not be deterred. Plaintiff's reasoning falls short of the stated purpose of the statute. If the regulation could operate only after actual wrongdoing had taken place, the programs would be subject to the very evils Congress sought to avoid. The fact that the regulation may affect some individuals who would not participate in the conduct the legislation was meant to deter does not impair its otherwise valid purpose. *Mourning v. Family Publications Service, Inc., supra* 411 U. S. at 373, 93 S.Ct. 1652.

■ For these reasons the Court finds that OEO Instruction is "reasonably related" to the purposes of 42 U.S.C. § 2796 and does not exceed the authority granted by the Economic Opportunity Act of 1964, as amended.

### IV.

■ The Court has held that Plaintiff has standing to assert the Martins' right to marry in support of its claim. The right to marry has been held to be a fundamental right protected by the Due Process Clauses of the Fifth and Fourteenth Amendments. *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). Where a fundamental right is involved the Court may not end its inquiry upon finding that the regulation is reasonably related to its enabling legislation; the Court must go further and determine that enforcement of the regulation does not unconstitutionally infringe upon that right.

Plaintiff, in advancing its argument, contends that since compliance with the regulation would require dismissal of one of the Martins solely because they married, the regulation constitutes a penalty upon the fundamental right and freedom to marry in violation of the due process clause of the Fifth and Fourteenth Amendments.

■ In deciding this issue the Court must determine the degree of scrutiny to which it must subject the regulation. A regulation that significantly interferes with the exercise of a fundamental right requires rigorous scrutiny and must be supported by a compelling interest and be closely tailored to effectuate only those interests. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 262–263, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1975); *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 16–17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

The most recent pronouncement on what constitutes an infringement on the fundamental right to marry was in *Zablocki v. Redhail, supra.* The Court held unconstitutional a Wisconsin statute making court approval a prerequisite to marriage for each state resident who was under an obligation to support minor children not in his or her custody. The Court found that the statute interfered "directly and substantially with the right to marry." 434 U.S. at 387, 98 S.Ct. at 681.

The Court distinguished an earlier case in which it upheld sections of the Social Security Act providing for termination of a dependent child's benefits upon marriage to an individual not entitled to benefits under the Act. *Califano v. Jobst,* 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977).

The Court found that the directness and substantiality of the interference distinguished the cases. The Court found significant that in *Jobst* the rule terminating benefits upon marriage was not an attempt to interfere with the marriage decision, and that there was no evidence that the laws had significantly discouraged any marriages. *Zablocki v. Redhail, supra* 434 U.S. at 387 n.12, 98 S.Ct. 673.

Plaintiff has attempted to distinguish *Califano v. Jobst, supra,* from the present

case on the basis that the Social Security Amendments in question expanded rather than restricted the class of persons entitled to receive benefits. The amendments provided an exception to the general rule which terminated every dependent child's benefits upon marriage. The Court found it necessary to discuss the validity of the general rule before reaching the question of the constitutionality of the challenged exceptions. The Court found the general rule "unquestionably valid." *Califano v. Jobst, supra,* 434 U.S. at 54, 98 S.Ct. 95.

In *Keckeisen v. Independent School District 612,* 509 F.2d 1062 (8th Cir. 1975), *cert. denied* 423 U.S. 833, 96 S.Ct. 57, 46 L.Ed.2d 51 (1975), the Eighth Circuit had before it questions similar to those presented in the present case. Plaintiff, a high school principal, brought suit after Defendant School Board had terminated his employment pursuant to the School Board's policy not to employ the combination of husband and wife in the same building or in an Administrator-Teacher relationship. The stated purpose of the rule was to avoid conflicts of interests. Both Plaintiff and his wife were tenured teachers in the same school at the time of their marriage. Upon their marriage the School Board notified them of the applicability of the policy to their situation, and after a public hearing notified Plaintiff that his employment contract would not be renewed beyond the end of the school year.

In upholding the School Board's action the Court held that although there was no indication that Plaintiff's performance had been in any way unsatisfactory a policy based upon the assumption that married couples are susceptible to the natural prejudices of their relationship was a valid exercise of the School Board's power. The Court felt that the School Board should not be placed in a position of having to wait until a conflict of interest occurred before taking action. 509 F.2d at 1066.

The question of what constitutes a penalty on the fundamental right to marry was also discussed in the context of income taxing provisions in *Johnson v. United States,* 422 F.Supp. 958 (N.D.Ind.1976), aff'd. sub nom. *Barter v. United States,* 550 F.2d 1239 (7th Cir. 1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755. There it was held that taxing provisions which subjected some married couples to substantially greater personal income tax liabilities than they would have been subjected to if they were unmarried and filing as single persons did not impose a constitutionally significant burden upon the right to marry.

In a case very similar to *Johnson,* and decided after both *Zablocki v. Redhail, supra,* and *Califano v. Jobst, supra,* the Court of Claims also rejected an argument based upon the premise that income taxing provisions constituted a penalty on marriage and granted Defendant's motion for summary judgment. *Mapes v. United States,* 576 F.2d 896, 217 Ct.Cl. —— (1978). Plaintiffs argued that the taxing provisions should be subjected to strict scrutiny. The Court of Claims, in light of *Zablocki* and *Jobst,* rejected the argument stating:

"Nevertheless, we read the *Jobst* and *Zablocki* cases together to imply that the application of strict scrutiny is appropriate only where the obstacle to marriage is a direct one, i. e., one that operates to preclude marriage entirely for a certain class of people, as in *Zablocki.* The effect of the rates in Code section 1 is somewhat analogous to the effect of the termination of social security benefits in *Jobst:* the elevated tax burden might in fact dissuade some couples from entering into matrimony but does not present an insuperable barrier to marriage." 576 F.2d at 901.

In the present case this Court finds that OEO Instruction 6900–01 did not operate to block the Martins' marriage as was the case in *Loving v. Virginia, supra,* or directly interfere with the marriage decision as was the case in *Zablocki v. Redhail, supra.* It is important to note again that the regulation does not operate to prohibit or penalize the right of any person within the employ of Southwestern to marry or even to marry a co-employee; it only prohibits the employment of married couples where one would exercise supervisory authority over the oth-

er or be in a position to influence personnel actions affecting the spouse. Marriage itself is not the subject of the regulation. Its purpose is to insure that community action programs receiving federal assistance are administered free of any conflicts of interests or family favoritism.

The burden imposed upon the Martins, if it is to be construed as a burden on the exercise of the right to marry at all, must be considered to be an indirect burden. It is suffered not for marrying, but for marrying one in a particular position. This does not rise to the level of an impermissible interference and cannot be said to have significantly interfered with a fundamental right.

■ Therefore, the Court holds that OEO Instruction 6900–01 does not significantly interfere with the Martins' right to marry and is not violative of the due process clauses of the Fifth and Fourteenth Amendments. In so holding the Court is guided by the principle laid down in *Zablocki v. Redhail, supra:*

> "We do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed." 434 U.S. at 386, 98 S.Ct. at 681.

Finding that the regulation does not significantly interfere with the Martins' fundamental right to marry, the Court need not consider whether Defendant has demonstrated a compelling interest.

## V.

Plaintiff's final argument in support of its motion for summary judgment is that Defendant has waived or should be required to waive application of OEO Instruction 6900–01 in the circumstances here involved. Plaintiff's argument, in this respect, is supported by the affidavit of Richard Martin. Plaintiff has alleged that H. Darby Hous-

ton, then employed by Defendant as the "Chief, Penn. West Va. Operations Division," orally granted a waiver of the regulation with respect to the Martins in 1973. Plaintiff contends that because of the alleged oral waiver Defendant has already waived or should now be required to waive application of the regulation.

OEO Instruction 6900–01, with regard to waivers, permits the granting of only a temporary waiver of the rule and permission to phase compliance over a period of time. Further the regulation provides that the agency requesting a temporary waiver submit a plan for accomplishing the required compliance and a deadline for its completion. There is no evidence in the record that Plaintiff complied in any way with these latter requirements.

■ There is no provision in the regulation for a permanent waiver and the Court finds, as a matter of law, that any temporary waiver granted in 1973 would necessarily have expired by 1976. The language of the regulation is clear, and the Court cannot assume that Mr. Houston had any greater authority with respect to waivers than what was expressly provided for therein. The Court, therefore, finds that Defendant has not waived and should not be required to waive compliance with the regulation.

## VI.

Plaintiff also presents to the Court an argument that this case may not be decided on a motion for summary judgment. Plaintiff argues that since Defendant has denied Plaintiff's allegation that a waiver was granted in 1973, there is a factual determination before the Court that may not be resolved on a motion for summary judgment.

The Court has already held that any waiver granted in 1973 would have expired prior to the Defendant's action in 1976. It, therefore, follows that any question of whether or not there was a waiver granted in 1973 is irrelevant to the determination of this case, and the Court holds that no genuine issue of material fact exists.

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for summary judgment be, and the same is hereby, denied.

It is further ORDERED that Defendant's motion for summary judgment be, and the same is hereby, granted.