**James KLANSECK and Terri Mozug, Plaintiffs,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.**

**Civ. A. No. 80–72069.**

United States District Court, E. D. Michigan, S. D.

June 27, 1980.

Order Granting Plaintiffs' Motion For Evidentiary Hearing and Modification of Memorandum Opinion.

Aug. 20, 1980.

Supplemental Memorandum Opinion Feb. 26, 1981.

---

**14**

Albert Calille, Detroit, Mich., for plaintiff.

Thomas G. Kienbaum, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

THORNTON, District Judge.

Plaintiffs herein seek a declaratory judgment and injunctive relief. At issue is an employment policy of defendant Prudential Insurance Company of America alleged by plaintiffs to be violative of the Michigan Civil Rights Act. Plaintiffs are two persons each employed by defendant as a District Agent. Plaintiffs are planning to marry each other in August, 1980. It is the policy of the defendant that:

> If two members of the District Agencies Sales Staff in the same *or* different Districts (Agents, Sales Managers, and Managers) marry, one of them must resign or be transferred to the Sales Staff of the Ordinary Agencies or to the Home Office, if such can be arranged.

Plaintiffs contend that the above policy directly violates the Elliott-Larsen Civil Rights Act of 1977,[1] in particular MCL § 37.2202; MSA § 3.548(202). Said provision insofar as applicable reads as follows:

(1) An employer shall not:

(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

---

1. Of the State of Michigan.

It is clear (and undisputed) that upon the marriage of plaintiffs (to each other) one of them must discontinue his or her status as District Agent. By affidavit[2] defendant states that either plaintiff could be employed immediately "within the ordinary agency department as a special agent." It is the position of plaintiff(s) that as Special Agent he or she would earn less money than as a District Agent. Defendant does not dispute that this is a possibility.

As legal justification for the policy prohibiting two persons who are married to each other from both being District Agents defendant relies on an exemption provision in the Michigan Civil Rights Act—M.C.L. § 37.2208; M.S.A. § 3.548(208). Said provision reads as follows:

A person subject to this article may apply to the commission for an exemption on the basis that religion, national origin, age, height, weight, or sex is a bona fide occupational qualification reasonably necessary to the normal operation of the business or enterprise. Upon sufficient showing, the commission may grant an exemption to the appropriate section of this article. *An employer may have a bona fide occupational qualification on the basis of religion, national origin, sex, age, or marital status, height and weight without obtaining prior exemption from the commission, provided that an employer who does not obtain an exemption shall have the burden of establishing that the qualification is reasonably necessary to the normal operation of the business.* (Emphasis supplied).

It is the position of defendant that its policy of non-spousal District Agents is "reasonably necessary to the normal operation of its business." Defendant's compensation plan is such that it is entirely possible for a spousal District Agent team to manipulate their accounts in such a way as to increase their earnings in a way not obtainable by a District Agent "who is not on a one family income basis with another District Agent." The underlying principle involved is conceptually comparable to gerry-mandering. Defendant does not have a policy prohibiting District Agents from manipulating policy sales for the reason that it would be impossible as a practical matter to enforce such policy. The potential for spousal team manipulation is there and because of the very nature of policy sales there is no way for defendant to monitor the occurrence of the manipulation of policies sold.

Pending before the Court are cross motions for summary judgment and affidavits filed in support thereof. Defendant submitted the Affidavit of Robert V. Hau, Vice President—Regional Marketing of the Michigan Region of The Prudential Insurance Company of America. The Hau Affidavit details the compensation plan of defendant's and illustrates by way of examples how the manipulation by two spousal District Agents actually can operate to frustrate the plan, said plan having been in effect since some time in the 1940's and covering 20,000 District Agents employed by defendant in the United States. We set forth below several paragraphs from the Hau Affidavit:

4. Prudential has in effect a compensation plan covering its District agents (as well as other plans for the remainder of its sales force). This compensation plan, which covers the District sales force located in the State of Michigan, is contained in an agreement in effect between Prudential and the Insurance Workers International Union (AFL–CIO), a copy of which is attached hereto as Exhibit "A" and by this reference made a part hereof. The essence of the agents' compensation plan as contained in Exhibit "A" has been in effect since some time in the 1940's. It covers, with minor variation, all 20,000 District agents employed by Prudential in the United States.

\* \* \* \* \* \*

6. Prudential has in effect various rules governing the employment of

---

2. Affidavit of Robert V. Hau dated June 3, 1980, p. 8.

persons related to each other on one basis or another in order to avoid, or at least minimize, the possibility of conflicts (for instance, in order to avoid supervision of an employee by a relative). One of these is a prohibition against the employment of a spouse of a District agent as a District agent. This Rule provides:

'If two members of the District Agencies Sales Staff in the same or different Districts (Agents, Sales Managers, and Managers) marry, one of them must resign or be transferred to the Sales Staff of the Ordinary Agencies or to the Home Office, if such can be arranged.'

7. The reason Prudential implemented this rule is as follows: Prudential's compensation plan, as will hereafter be more fully explained, is based on the efforts of individual District agents. Because of the nature of the compensation plan, it would be profitable for two District agents who are married, to manipulate the terms of the compensation plan so that increased compensation for the spousal team, not reflecting the efforts of individuals as is intended by the compensation plan, would result. The reason this particular rule pertains to spouses (as opposed to other family relationships) is because the possibility and motivation for manipulation of compensation is very slight, if not non-existent, in cases where separate household incomes are involved. The policy is not intended to affect the employment of married persons by Prudential. Prudential hires and employs individuals without regard to their marital status (unless by operation of Prudential's anti-nepotism policy) and, of course, a large number of its present District sales force is married.

\*　　\*　　\*　　\*　　\*　　\*

9. The foregoing examples do not constitute the only possibilities under Prudential's compensation program plan for manipulation by a spousal team. However, the Affiant is informed and believes that it covers the significant instances where this could occur. The instances referred to could, in the case of only one spousal team which chooses to manipulate program features as described, cost Prudential well in excess of $3,500 per year in unwarranted compensation. Multiplied by a number of years and a number of spousal teams, this could cost Prudential in the State of Michigan alone tens of thousands of dollars.

10. The policy set forth in paragraph 6 above does not require that one or the other agent affected by the policy resign. Instead, it is contemplated that he or she may be employed within the ordinary agency department as a special agent. Either Mr. Klanseck or Ms. Mozug could be so employed immediately.

■ Defendant agrees that it has the burden under the statute "of establishing that the qualification is reasonably necessary to the normal operation of the business." The Supreme Court had this to say in *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577–578, 98 S.Ct. 2943, 2949–2950, 57 L.Ed.2d 957 (1978):

When the prima facie case is understood in the light of the opinion in *McDonnell Douglas*, it is apparent that the burden which shifts to the employer is merely that of proving that he based his employment decision on a legitimate consideration, and not an illegitimate one such as race. To prove that, he need not prove that he pursued the course which would both enable him to achieve his own business goal and allow him to consider the most employment applications. Title VII prohibits him from having as a goal a work force selected by any proscribed discriminatory practice, but it does not impose a duty to adopt a hiring procedure that maximizes hiring of minority employees. To dispel the adverse inference

from a prima facie showing under *McDonnell Douglas*, the employer need only 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.' [*McDonnell Douglas Corporation v. Green*,] 411 U.S. [792] at 802 [93 S.Ct. 1817, 1824, 36 L.Ed.2d 668.]

See also *Board of Trustees of Keene State College et al v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978).

█ It appears to this Court that the Hau Affidavit provides more than adequate justification for finding that defendant's policy herein comes within the bona fide occupational qualification so as to exempt its non-spousal policy from the prohibition of the statute. Plaintiffs have filed no countervailing affidavit(s) setting forth facts contesting the reasonable necessity of defendant's non-spousal policy with respect to District Agents. Plaintiff Klanseck has filed an Affidavit that is directed solely to the statement of certain commissions earned by him in 1979.

There being no genuine issue as to any material fact and the Court concluding that defendant is entitled to judgment as a matter of law, the Defendant's Motion For Summary Judgment should be GRANTED and an Order may be presented accordingly.

## ORDER GRANTING PLAINTIFFS' MOTION FOR EVIDENTIARY HEARING

Plaintiffs herein have filed a Motion for Reconsideration and Evidentiary Hearing. Reference is hereby made to the Memorandum Opinion of this Court entered June 27, 1980 and to the Modification thereof filed contemporaneously herewith.

Accordingly, the determination of Defendant's Motion For Summary Judgment will be held in abeyance pending the evidentiary hearing referred to in the Court's Modification of today's date and requested by plaintiffs in their Motion.

1. Bona fide occupational qualification.

## MODIFICATION OF MEMORANDUM OPINION OF JUNE 27, 1980

This Court on June 27, 1980 entered its Memorandum Opinion concluding that Defendant's Motion For Summary Judgment should be granted. The Order presented by defendant pursuant to said Memorandum Opinion has not been entered. Also on June 27, 1980 the Court of Appeals for the Sixth Circuit decided and filed its opinion in the case of *Marilyn Horace vs. City of Pontiac*. Upon review of that opinion and the cases cited therein, particularly *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977) the Court has reached the conclusion that the determination of Defendant's Motion For Summary Judgment requires an evidentiary hearing to adduce evidence in support of the bfoq defense relied on by defendant.

This Court's Memorandum Opinion of June 27, 1980 in the instant case is, therefore, modified in accordance with the foregoing.

## SUPPLEMENTAL MEMORANDUM OPINION

THORNTON, District Judge.

This Court on June 27, 1980 filed a Memorandum Opinion in which the Court concluded that Defendant's Motion For Summary Judgment should be granted. Subsequently, on August 20, 1980, the Court filed a Modification of Memorandum Opinion of June 27, 1980 in which the Court concluded that an evidentiary hearing should be held directed to the BFOQ[1] defense relied on by defendant. The Court hereby incorporates by reference said two memoranda.

Pursuant to the Modification Opinion an evidentiary hearing has now been held. At said hearing defendant assumed the burden of showing that its BFOQ is "reasonably necessary to the normal operation of its business." M.C.L. § 37.2208; M.S.A. § 3.548(208). Defendant called as its witness one George G. McCarthy, a person intimately connected with the internal affairs of defendant corporation during the

years 1935–1979. McCarthy presently acts as a consultant to defendant and to certain other insurance companies. His testimony was convincing to the point of leaving no doubt whatsoever that defendant's BFOQ is reasonably necessary to the normal operation of its business.

McCarthy testified that he was one of the participating officials at defendant corporation who was instrumental in developing the District Agent non-spousal policy which was reduced to written form in 1974.

McCarthy pointed out that while two District Agents not married to each other could in fact manipulate their accounts to the same extent that a spousal team could there would develop so many roadblocks to a successful operation that they would soon become discouraged from pursuing that course. McCarthy concluded that the possibility of manipulation by a non-spousal team presents a very low risk of sustained vulnerability for the defendant corporation. The various roadblocks that are encountered by a non-spousal team are not present in the case of a spousal team operating as an economic unit and filing joint income tax returns.

McCarthy further pointed out that the difference in net income between a District Agent and an Ordinary Agent on a yearly basis is probably negligible after taking into account certain expenses the District Agent bears that do not exist for the Ordinary Agent. He also testified that approximately the same number of District Agents transfer each year to the Ordinary Agent category as Ordinary Agents transfer to the District Agent category. His testimony clearly indicated that the District Agent's job is in no way considered a plum compared to the Ordinary Agent's job but rather that one is as desirable as the other in terms of financial remuneration.

It seems appropriate at this juncture to comment on another aspect of the Michigan statute involved herein. The position of plaintiffs is that the non-spousal policy unlawfully discriminates against them with respect to marital status. This Court so far has dwelt upon the validity of the BFOQ defense herein. A few words should be written concerning the thrust of "marital status." It is a claim of Defendant Prudential that the alleged discrimination is not "because of ... marital status." The policy of Prudential herein under attack in no way affects married persons versus single persons per se. The testimony of McCarthy was unequivocally to the effect that defendant's entire employment policy is evenhanded with respect to married and non-married persons—marital status per se is determinative of no decision with respect to employees or prospective employees. The rub occurs when one District Agent marries another District Agent—the rule prohibits one of them (either one) from continuing as a District Agent. The defendant company however continues to employ both but requires that one transfer to an Ordinary Agent. This Court believes there is merit to the argument that the company policy herein at issue is not one of discrimination because of "marital status." The policy does not come into play by virtue of a person getting married and assuming the status of a married person. It only comes into play if the marriage is between two District Agents. That *who* you are married to rather than *if* you are married is a significant distinction in evaluating discrimination because of marital status is well supported by respectable case law. See *Thompson v. Sanborn's Motor Express, Inc.,* 154 N.J.Super. 555, 382 A.2d 53 (1977); *In the Matter of Manhattan Pizza Hut, Inc. vs. New York State Human Rights Appeal Board,* 51 N.Y.2d 506, 434 N.Y.S.2d 961, 415 N.E.2d 950 (1980).[2] The identity and occupation of a spouse is a far cry from the fact of his/her existence. The statute herein prohibits discrimination on the basis of the existence or nonexistence of a spouse. It says nothing about discrimination because of a spouse having the same employer as the employee. It appears to this Court that defendant's non-spousal policy is not violative of the Michigan statute at issue herein.

2. State of New York Court of Appeals.

However even if said policy be deemed violative of the "marital status" provision of the statute Defendant Prudential has borne the burden of bringing itself within the BFOQ exception.

Defendant's Motion For Summary Judgment should be granted and an order in conformance with this Court's Memorandum Opinion of June 27, 1980 and with the instant Supplemental Memorandum Opinion may be presented.