396 S.E.2d 185

Alan H. TOWNSHEND

v.

The BOARD OF EDUCATION OF the COUNTY OF GRANT.

No. 19170.

Supreme Court of Appeals of West Virginia.

July 19, 1990.

---

Daniel Staggers, Keyser, for The Bd. of Educ. of the County of Grant.

Dennis V. DiBenedetto, Pros. Atty., Petersburg, for Alan H. Townshend.

NEELY, Chief Justice:

The Board of Education of the County of Grant appeals from a final order of the Circuit Court of Grant County requiring the Board of Education to rescind the transfer of Alan H. Townshend, thereby, allowing him to remain as a teacher in the school where his wife is principal. The Board of Education maintains that Mr. Townshend's transfer was required by the Board's policy prohibiting employment of

immediate family members in an administrator-teacher relationship because of possible conflicts of interest and favoritism. Because the Board's conflict of interest policy is not an abuse of discretion and was exercised in the best interests of the schools, we reverse the judgment of the circuit court.

The facts in this case are undisputed. During the 1987–88 school year, Mr. Townshend was assigned to the Petersburg Elementary School as a special education teacher. In October 1987, Mrs. Townshend was appointed principal of Petersburg Elementary School. When Mrs. Townshend was offered the position, she was advised of the Board of Education's policy prohibiting employment of immediate family members in a direct supervisory relationship and in the event of a promotion, requiring the transfer of the other family member as soon as possible.[1] After consulting with her husband, Mrs. Townshend accepted the position. By letter dated 15 March 1988, Mr. Townshend was notified that he was to be transferred because of the Board's policy.

During the 1987–88 school year, the Board of Education arranged for Mr. Townshend to be formally evaluated by Mr. Cunningham, the co-operating principal at Petersburg Elementary School. Mr. Townshend was the only teacher at the school to be supervised and evaluated by Mr. Cunningham. Although Mr. Cunningham was present only for part of the school day and Mrs. Townshend was responsible for supervising all the staff the rest of the day, no

problems arose during the school year. Mr. Townshend presented a petition signed by his co-workers attesting to the lack of problems. Mr. Townshend has been teaching at the Petersburg Elementary School since 1970 and in 1987–88 received a satisfactory evaluation that included several ratings of "commendable", the highest rating given.

After the Board upheld his transfer, Mr. Townshend filed a grievance with the West Virginia Education Employees Grievance Board. After a hearing, the hearing examiner denied the grievance and upheld Mr. Townshend's transfer. Mr. Townshend appealed to the Circuit Court of Grant County that held in Mr. Townshend's favor because it found "the Board violated its own policy" in appointing Mrs. Townshend principal and "must abide by its decision...."[2] Because we find that the Board of Education's conflict of interest policy was a reasonable exercise of its discretion and was not violated by its appointment of Mrs. Townshend, we reverse the circuit court and remand the case.

I

*W.Va.Code,* 18A–2–7 [1989], states in pertinent part that:

The superintendent, subject only to approval of the board, shall have authority to assign, transfer, promote, demote or suspend school personnel and to recommend their dismissal pursuant to provisions of this chapter.

---

1. The Professional Staff Assignments and Transfers policy, adopted by the Board of Education on 11 November 1981, as revised on 9 July 1985, includes the following pertinent parts:

    No new assignments will be made which places one member of a family in direct supervisory and/or evaluative relationship with another member of his/her immediate family....

    Nothing in this section shall be construed to prevent an existing school staff member from being promoted to an administrative position, which would place him/her in a direct supervisory and/or evaluative relationship with another member of his/her immediate family. Provided, that a transfer of the other family member will be made by the board of education at the earliest possible date.

2. Mr. Townshend styled his appeal to the circuit court as a petition for writ of certiorari. The circuit court treated Mr. Townshend's petition as an appeal under *W.Va.Code,* 18–29–7 [1985]. We note that jurisdiction was proper, the petition contained the essential allegations and there was no showing of prejudice to the Board of Education. The circuit court's refusal to dismiss Mr. Townshend's appeal for a mere technical defect or irregularity is in the spirit of the *West Virginia Rules of Civil Procedure* that require the rules to "be construed to secure the just, speedy, and inexpensive determination of every action." Rule 1, *W.Va.R.Civ.P. See Johnson v. Cassell,* 182 W.Va. 317, 387 S.E.2d 553 (1989).

We have repeatedly held that the power to transfer teachers must be exercised in a reasonable manner and in the best interests of the school. In Syllabus Point 3, *Dillon v. Board of Education of County of Wyoming*, 177 W.Va. 145, 351 S.E.2d 58 (1986), we stated:

County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious.

Syllabus Point 2, *State ex rel. Oser v. Haskins*, 179 W.Va. 789, 374 S.E.2d 184 (1988); Syllabus Point 2, *Johnson v. Cassell*, 182 W.Va. 317, 387 S.E.2d 553 (1989); *State ex rel. Hawkins v. Tyler County Board of Education*, 166 W.Va. 363, 275 S.E.2d 908 (1980); Syllabus Point 2, *Beverlin v. Board of Education of Lewis County*, 158 W.Va. 1067, 216 S.E.2d 554 (1975); Syllabus, *Neal v. Board of Education of Putnam County*, 116 W.Va. 435, 181 S.E. 541 (1935).

█ In the present case, the Board of Education properly adopted a policy with a laudatory purpose: preventing conflicts of interest and favoritism. Conflicts of interest and favoritism are subversive of the Board's interest in providing a good education. Mr. Townshend argues that because the Board set up an extraordinary procedure to assure that no favoritism occurred before his transfer could be arranged, the Board should be required to continue that procedure. However even under the special procedure, Mrs. Townshend, as principal, has the responsibility for the functioning of the entire school. We do not imply that Mrs. Townshend would be less than fair-minded in her administration of the school. The Board's policy is concerned not only with the actual school administration, but also with the effect on the morale of the other teachers from an apparent conflict of interest. The mere existence of a wife-husband/administrator-teacher situation can have a deleterious effect on the morale of the faculty. We agree with the conclusion of the Eighth Circuit in *Keckeisen v. Independent School District 612*, 509 F.2d 1062, 1066 (8th Cir.1975), *cert. denied*, 423 U.S. 833, 96 S.Ct. 57, 46 L.Ed.2d 51 (1975):

We have no doubt that in many cases where husbands and wives are employed in supervisor-supervisee capacities, the married couple make an exemplary effort to maintain fairness, but we cannot say that a policy based on the assumption that married couples are susceptible to the natural prejudices of their relationships is irrational, arbitrary or capricious.

We note that anti-nepotism rules are standard practice and date back to the turn of the Century. Today many private companies have anti-nepotism policies that restrict spouses from working under the same chain of command. A 1981 survey of 374 companies reported that of the 82 percent who would employ both husbands and wives, 74 percent restrict spouses from working in the same department or in the same function. A 1985 survey of 115 companies reported that 46 percent prohibit supervision by a relative. U. Sekaran, *Dual–Career Families* (1986) 120.

We hold that a board of education policy that prohibits one spouse from supervising the other spouse within a county school system is a reasonable exercise of the board's supervisory authority to prevent favoritism, conflicts of interest or the appearance of either.

█ Mr. Townshend argues that his transfer violates *W.Va.Code*, 18–29–2(m), –(o) and 18A–4–8b and West Virginia Board of Education Policy No. 5300. Basically Mr. Townshend argues that he is discriminated against because of his marital status and that other faculty received more favorable treatment.[3] Mr. Townshend is

3. *W.Va.Code*, 18–29–2 [1985] states the following pertinent definitions:
  (m) "Discrimination" means any differences in the treatment of employees unless such differences are related to the actual job responsibilities of the employees or agreed to in writing by the employees....

being treated differently from other faculty members because he is subject to transfer and is not being evaluated by the principal, his wife, but Mr. Townshend's different treatment results from his personal relationship with the principal and not from discrimination or favoritism.

Mr. Townshend's argument that he is being discriminated against because of his marital status must be rejected because his marital status, the state of being married or single, is not the reason for his transfer. Rather Mr. Townshend is to be transferred because of his personal relationship with the newly appointed principal. We also note that the freedom to marry is recognized as a vital personal right. *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). However, the Board's policy does not deny Mr. Townshend the right to marry, but does deny him the right to be a teacher under the supervision of his wife. Mr. Townshend's allegation that other faculty members received more favorable treatment is not persuasive because the appointment of his wife to principal was the objective factor that triggered his transfer and the rest of the faculty was not similarly affected. The record also indicates that the Board of Education had allowed no exceptions to its anti-nepotism policy.

Mr. Townshend alleges that his transfer violates *W.Va.Code*, 18A–4–8b [1988], that requires in pertinent part:

A county board of education shall make decisions affecting promotion and filling of any classroom teacher's position occurring on the basis of qualifications.

Mr. Townshend argues that because of his long relationship with his special education students, he has special qualifications and should be allowed to continue in that same teaching position. However, the Board of Education has identified an additional requirement or "qualification"—namely, no immediate family members in a supervisor/supervisee relationship. Given that the Board's policy is designed to avoid a potential conflict of interest or favoritism,

we find the "qualification" of not being closely related to the supervisor to be reasonable.

Mr. Townshend's allegation that his transfer violated West Virginia Board of Education Policy No. 5300 is factually incorrect. First we note West Virginia Board of Education Policy No. 5300 deals with disciplinary transfers. Mr. Townshend's transfer was administrative and the record contains no allegations of misconduct. In *Holland v. Board of Education of Raleigh County*, 174 W.Va. 393, 327 S.E.2d 155 (1985), we discussed the difference between administrative and disciplinary transfers and noted that only disciplinary transfers were subject to the protection offered by West Virginia Board of Education Policy 5300. *Holland, Id.* 174 W.Va. at 394–95, 327 S.E.2d at 156, states that:

Teachers have no vested right to be assigned to any particular school in the county. However, the power of the county superintendent must be exercised in a reasonable manner and in the best interests of the schools. Arbitrary and capricious use of power will not be permitted. (Citations omitted).

Mr. Townshend also argues that because the Board of Education set up a unique procedure to have someone other than his wife evaluate him prior to his transfer, the Board should be required to continue the procedure. Mr. Townshend's demand for special treatment shows that a transfer is necessary in order for the Board to avoid a charge of favoritism by other faculty members.

The majority of courts that have examined the nepotism question have reached similar results. In *Keckeisen, supra,* the Eighth Circuit upheld the discharge of a principal under a school board's anti-nepotism policy after he married a teacher in his school. The Circuit Court noted that the board's anti-nepotism policy does "not deny to people the right to marry: it only prohibits the employment of married couples in administrator-teacher situations." *Id.* at 1065. In *Cutts v. Fowler*, 692 F.2d 138,

---

(o) "Favoritism" means unfair treatment of an employee as demonstrated by preferential, exceptional or advantageous treatment of another or other employees.

139 (D.C.Cir.1982), the court upheld the transfer of Ms. Cutts from her civil service position "to avoid potential nepotism problems" because of her husband's promotion to head her division. In *Yuhas v. Libbey–Owens–Ford Co.*, 562 F.2d 496 (7th Cir. 1977), *cert. denied*, 435 U.S. 934, 98 S.Ct. 1510, 55 L.Ed.2d 531 (1978), the court upheld the company's refusal to hire Ms. Yuhas because of a no-spouse new employee rule. In *Harper v. Trans World Airlines*, 525 F.2d 409 (8th Cir.1975), the court upheld the company's requirement that one spouse transfer or resign when two department co-workers marry. In *Southwest Community Action Council, Inc. v. Community Services Administration*, 462 F.Supp. 289 (S.D.W.Va.1978), the court upheld a prohibition against the employment of close family members in an agency on whose board a family member served. In *Parsons v. Del Norte County*, 728 F.2d 1234 (9th Cir.1984) *cert. denied* 469 U.S. 846, 105 S.Ct. 158, 83 L.Ed.2d 95 (1984), the court upheld the county's prohibition against married permanent employees working in the same department. In *Klanseck v. Prudential Ins. Co. of America*, 509 F.Supp. 13 (E.D.Mich.1980), the court upheld the company's no-spouse rule for district agents based on the company's perception of possible gerrymandering. In *Thompson v. Sanborn's Motor Express, Inc.*, 154 N.J.Super. 555, 382 A.2d 53 (1977), the court upheld the termination of a wife based on a no-relatives policy. In *Manhattan Pizza Hut, Inc. v. New York State Human Rights Appeal Board*, 51 N.Y.2d 506, 434 N.Y.S.2d 961, 415 N.E.2d 950 (1980), the court upheld a wife's termination based on a no-family supervisor rule, despite a four year employment of the wife under her husband's supervision.

Most courts that have *restricted* or struck down anti-nepotism policies did so in contexts where the policies were unreasonably over-broad and prohibited employment of any other family members by the company or governmental agency, regardless of whether there was or would appear to be a conflict of interest. *See Voichahoske v. City of Grand Island,* 194 Neb. 175, 231 N.W.2d 124 (1975) (refused to uphold a city policy against employing more than one person in a household); *Kraft, Inc. v. State of Minnesota,* 284 N.W.2d 386 (Minn.1979) (refused to uphold a policy prohibiting full-time employment of more than one member of an immediate family absent a compelling reason); *Bretz v. City of Center Line,* 88 Mich.App. 451, 276 N.W.2d 617 (1979) (refusing to uphold a city ordinance barring the employment of anyone "within the second degree of consanguinity" to any other city employee); *Winrick v. City of Warren,* 99 Mich.App. 770, 299 N.W.2d 27 (1980) (refusing to uphold a city ordinance restricting family members from working in the same department).[4]

## II

■ We have also required that boards of education follow the procedures that they properly establish. In Syllabus Point 2, *Dillon supra,* we stated:

> County boards of education are bound by procedures they properly establish to conduct their affairs.

In this case, the Board's anti-nepotism policy required that if a promotion resulted in supervision of a family member, the family member would be transferred at the earliest possible date. Mrs. Townshend was informed of the policy when she was appointed principal and after her promotion, her husband was placed on the transfer list. During the interim, the Board made

---

**4.** We have found three cases that adopt an eccentric position in interpreting their states' human rights law. Even in these cases, the facts indicate that an over-broad no-spousal employment policy was at issue. *See Thompson v. Board of Trustees,* 627 P.2d 1229 (Mont.1981) (refusing to uphold school board no-spousal employment using a very broad interpretation of the term "marital status"); *Washington Water Power Co. v. Washington State Human Rights*

*Comm'n.,* 91 Wash.2d 62, 586 P.2d 1149 (1978) (holding employer's no-spousal rule discriminatory based on "marital status" unless it was a *bona fide* occupational qualification); *Cybyske v. Independent School District No. 196, Rosemount–Apple Valley,* 347 N.W.2d 256 (Minn. 1984) *cert. denied,* 469 U.S. 933, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984) (interpreting "marital status" broadly but refusing to apply the interpretation given to the facts of the case).

**424**

special arrangements for the supervision and evaluation of Mr. Townshend. The circuit court's decision that Board of Education failed to follow its own procedures is factually incorrect.

Because we find that in the matter of Mr. Townshend's administrative transfer, the Board of Education of Grant County exercised its discretion reasonably, in the best interest of the schools and in a manner which was not arbitrary or capricious, we reverse the decision of the Circuit Court of Grant County and remand this case for proceedings consistent with this opinion.

Reversed and Remanded.